| Jan'y Term, | Moody and Koons vs. The State | 1866. |
|---|---|---|

# Wheeling.

Absent, HARRISON, J.*

MOODY & KOONS *vs.* THE STATE.

January Term, 1866.

1. A verdict of "guilty as charged in the indictment," is good, although it may contain more than one count.

2. Where parties are charged with robbing from another, notes or paper, which are produced on the trial, and inspected by the jury, and no objection or suggestion as to their being worthless or spurious, is made by the defendants, and especially when it is proven by the person robbed, that he received the notes from the United States government in payment for services, it is not error in the court trying the case to refuse to set the verdict aside because it is contrary to evidence, or for want of evidence proving the genuineness of the notes.

3. A case in which a demurrer to an indictment was properly overruled.

The grand jury at the September term, 1865, of the circuit court of *Upshur* county, found a bill of indictment against *Jonathan Moody* and *John Koons*, charging, in the first count, that on the 10th day of September, 1865, the prisoners made an assault upon one *Jackson Clark*, and feloniously put him in bodily fear, and then and there violently and against his will did steal, take and carry away from his person six twenty dollar United States notes of the value of 120 dollars; four ten dollar United States notes of the value of forty dollars; twenty five dollar United States notes of the value of 100 dollars; and charging in the second count, after the allegations of putting in fear, &c., that they feloniously took, &c., "thirty United States notes for the payment of divers sums of money, amounting in the whole to the sum of 260 dollars, of the value of 260 dollars, the property and notes of the said *Clark*, then and there being found, the said sum of 260 dollars secured and payable by

*He was absent on account of illness, and the remaining judges called *N. Harrison*, judge of the IX circuit, to the bench.

and upon the said notes, being then and there due and unsatisfied to the said *Clark* to-wit, &c."

The prisoners were arraigned at the same term, when they demurred to the indictment and each count thereof, which was overruled, they then pleaded not guilty. The jury found a verdict as follows: "we, the jury, find the defendants, *John Koons* and *Jonathan Moody*, guilty as in the indictment against them is alleged; and we fix the term of imprisonment of *John Koons* in the penitentiary at the period of five years, and the term of imprisonment of *Jonathan Moody* in the penitentiary at the period of three years."

The defendants by their attorney moved the court to set aside the verdict, and grant a new trial, upon the ground that the verdict was contrary to evidence and without sufficient evidence; which motion the court overruled, and proceeded to sentence them. The defendants then excepted and the evidence was certified.

It was proven that, on Sunday afternoon, the 10th day of September, 1865, the prosecutor, *Jackson Clark*, went to the house of *Wilton Moody*, where the prisoners resided, in *Upshur* county; that he thence went to the house of *John A. Foster*, in said county; that the prisoners followed said *Clark* along the highway from the house of said *Wilton Moody*, and on the way met with one *Amos Slaughter*, and in company with said *Slaughter* went to the said *Foster's* house; that at said *Foster's* house the prisoners, in the presence of said *Slaughter*, accused the said prosecutor, *Clark*, of being a horse-thief and rebel, and of being armed, and asked him what he had in his pockets that seemed to stick out; that the prosecutor, *Clark*, then pulled from his pocket a tin box, which contained money, and handed it to the prisoner, *Koons*, who opened it, saw that it contained money, and then handed it back to *Clark;* that the prisoners and said *Slaughter* then left said *Foster's* house, in the direction whence they had come, and when they had gotten about one hundred and fifty yards from *Foster's* house and in sight of it, the prisoners sat down together upon a log, and the prisoner *Koons* said to *Amos Slaughter* that they would wait and watch that old

man (meaning *Clark*), and said *Slaughter* went on and left the prisoners; that the prosecutor, *Clark*, left said *Foster's* house, and went in the direction of the house of one *Joseph Houser*, which was about three miles distant from *Foster's*.

It was further proven that the prisoners and a boy named *Scott Slaughter*, aged thirteen years, followed said *Clark* to a point on said road in the woods, about midway between *Foster's* and *Houser's;* that the prisoner *Koons* took the prosecutor *Clark* by the arm, the prisoner *Moody* saying to the said *Clark*, "you can't leave here until we get ready." The prisoner *Koons* then took from prosecutor *Clark* his money, amounting to the sum of 260 dollars, consisting of United States notes of different denominations. The prosecutor wrung his hands, and seemed much excited and in fear. The prosecutor then left in the direction of *Buckhannon*, and was seen on the way thither entirely .naked; that the prisoners then went home, accompanied part of the way by the said boy, *Scott Slaughter*. *Koons* concealed the notes under a log, some distance from the house of *Wilton Moody*, where said notes were afterward found, by the direction of the prisoner *Koons* imparted to the justice who committed the prisoners, but when first asked about it he denied knowing anything about the money.

It was proven that the prosecutor *Clark*, on the day in question, was dressed in a check shirt, grayish pants and a straw hat, and had no other clothes with him; that he was a total stranger in the country, and that his demeanor was strange and eccentric; and that both of the prisoners had been soldiers in the United States army and had recently been discharged.

It was also proven, by the prosecutor *Clark*, that he had been a soldier in the United States army in the 18th Ohio regiment, and had received the said United States notes or the bulk of them in payment for his services as a soldier. The said notes were exhibited in court, before the court, the jury and the bar, and identified as the notes of the prosecutor *Clark*, which had been taken from him by the prisoner *Koons*. No question was asked any witness as to the gen-

uineness or value of the said notes, and no witness testified directly as to the genuineness of the same.

The defendants petitioned this court for a writ of error, alleging:

1st. The court erred in overruling the demurrer to the indictment and each count thereof.

2d. It was error in the court in not setting aside the verdict, on the ground that the verdict did not show on which count of the indictment the petitioners were found guilty.

3d. The court erred in not setting aside the verdict and granting a new trial, on the ground that there was no evidence that the United States notes in the indictment mentioned were genuine or of any value.

There was no attorney appeared here for the defendants. *Attorney General Hall* for the State.

BERKSHIRE, President. In the petition for the writ of error three errors are assigned, but no counsel appeared for the plaintiffs in error, and no reasons were offered for reversing the judgment of the court below and none is perceived by this court.

As to the first objection. The two counts in the indictment, I think, are sufficiently formal and technical and that the demurrer was properly overruled. There is nothing in the second error assigned, as to the finding of the jury. The verdict finds the prisoners guilty of the felony *as charged in the indictment,* which is in effect a finding of guilty on *both* counts (which charge the same offense in different form), and there was no error, therefore, in entering judgment on this verdict.

The third and last error complained of for refusing a new trial, &c., I think is equally untenable. The alleged ground for setting aside the verdict and granting a new trial is, that the verdict was contrary to the evidence and without *sufficient* evidence; and the reason assigned is that it was not shown by the State on the trial that the notes which were the subject of the robbery were genuine or of any value.

The notes, it appears, however, were produced on the trial, submitted to and examined by the jury, without any objection or suggestion by the prisoners, that they were spurious or worthless. It moreover appeared that they were the identical notes which were paid to the person from whom they were taken by the prisoners, by the government of the United States in payment of his wages for services as a soldier in the Federal army, and I think, the genuineness and value of the notes might well be inferred from this fact, and that we are not to presume here, that the government paid its troops in *spurious* and therefore valueless notes or paper.

The judgment must be affirmed.

The other judges concurred with Berkshire, president.

JUDGMENT AFFIRMED.