# CHARLESTON.

STATE v. RALPH RICHARDS, ROSCOE CROSS AND SAMUEL ELLIOTT

(No. 5588)

Submitted February 16, 1926.   Decided March 2, 1926.

1.  JURY—*If, In Homicide Case, Juror on Voir Dire Satisfies Court That, Notwithstanding Previously Expressed Opinion As to Accused's Guilt, His Mind is Free From Bias and Prejudice, and That He Can Give Accused Free and Impartial Trial, He is Competent, and Should Not Be Rejected From Panel of 20 Called (Const. U. S. Amend. 6; Code, c. 159, § 3).*

    If, in a homicide case, a juror on his voir dire shows to the satisfaction of the court that notwithstanding a previously

expressed opinion as to the guilt or innocence of the accused his mind is free from bias and prejudice and that he can give the defendant a fair and impartial trial according to the law and the evidence, he is a competent juror and should not be rejected from the panel of twenty called.   (p. 139.)

(Juries, 35 C. J. § 385.)

2.   SAME—*Although Juror Answers on Voir Dire That it Will Take Evidence to Change Previously Expressed Opinion As to Guilt of Accused, if Opinion Was Based Solely on Newspaper Reports and Reports Current in Community, and Merely Tentative, and He Satisfies Court That He Can Give Accused Fair Trial, Accepting Him Is Not Reversible Error.*

Although a juror so called answers on his voir dire that it will take evidence to change a previously expressed opinion as to the guilt or innocence of the accused, yet if it appears that such opinion is based solely on newspaper reports and reports current in the community, and the opinion merely tentative, and he satisfies the court by unequivocal and satisfactory answers to questions that regardless thereof he can give the prisoner a fair trial according to the law and the evidence adduced on the trial, it is not reversible error to accept such juror, and if selected to try the case, the judgment upon a verdict of guilty will not be reversed on that ground.   (p. 140.)

(Juries, 35 C. J. §§ 377, 385.)

3.   SAME—*Previously Formed and Expressed Opinion As to Guilt of Accused in Homicide Case, to Disqualify Juror, Must Have Been Deliberately and Decidedly Formed, and Juror Thereby Rendered Uncertain As to Ability to Try Case Without Bias or Prejudice on Law and Evidence.*

To disqualify a juror in a homicide case on account of a previously formed and expressed opinion as to the guilt or innocence of the accused, the opinion must have been deliberately and decidedly formed, and the juror thereby rendered uncertain as to his ability to try the case without bias or prejudice on the law and the evidence adduced at the bar of the court.   (p. 140.)

(Juries, 35 C. J. § 364.)

4.   CRIMINAL LAW—*Court Has Duty Before Admitting Confession to Determine Whether it Was Free and Voluntary or Given Under Duress and Threats, or by Inducement Held Out by Someone in Authority; Burden is on State to Show to Satisfaction of Court Facts Justifying Admission of*

*Confession; On Admission of Confession, Jury Are Final Judges of Its Weight and Effect in Connection With All Other Evidence.*

It devolves upon the trial court in the first instance, before admitting it, to determine from evidence whether a confession of guilt has been freely and voluntarily made and not under duress or threats or by some inducement made or held out to the accused by someone in authority, of benefit or reward of a worldly or temporal character, or in mitigation of punishment; and the burden is upon the state to show to the satisfaction of the court facts justifying the admission of such confession; and upon its admission the jury are then the final judges of the weight and effect that should be given such confession in connection with all the other evidence in the case as to the guilt or innocence of the defendant.   (p. 141.)

(Criminal Law, 16 C. J. §§ 1509, 1513, 1518, 2287.)

5.  SAME—*That Confession Was Made to Public Officer, Such As Sheriff or Public Prosecutor, Does Not Render it Inadmissible, Though Made in Response to Questions, if Made Without Threats or Intimidations, or Promises of Reward or Immunity From Punishment.*

The fact that a confession has been made to a public officer, as a sheriff or public prosecutor, will not render it inadmissible, provided it has been freely and voluntarily made, though in response to questions, if made without any threats or intimidations or promises of reward or immunity from punishment for the crime.   (p. 145.)

(Criminal Law, 16 C. J. §§ 1474, 1477.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Doddridge County.

Ralph Richards, Roscoe Cross and Samuel Elliott were convicted of murder, and they bring error.

*Affirmed.*

*M. K. Duty,* for plaintiffs in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

MILLER, JUDGE:

Defendants were indicted, tried and convicted of the murder of James Powell, on the night of December 23, 1924, at

his home in Doddridge County, and sentenced to imprisonment in the penitentiary for the period of their natural lives.

To reverse the judgment of imprisonment pronounced on April 25, 1925, counsels' first proposition is, that the jury trying the case was unlawfully impaneled, in that the panel of twenty jurors from which the trial jury was selected were not qualified jurors. On their voir dire seven of the panel had stated that they had made up and expressed an opinion as to the guilt or innocence of the defendants, and four of these said that it would take evidence to change their opinions; and these four were among those selected and sworn to try the case; and a fifth said, that from reading the newspapers that defendants had confessed, he thought they were the guilty parties, but that he didn't know. But the attorney general would affirm the judgment on the ground that each of these jurors qualified themselves by their answers to certain other questions propounded to them by the court, to the effect that, regardless of what they had read and heard about the case, and the opinions any of them had expressed, they would take the evidence of the witnesses, and the law as it might be propounded by the court, and give the defendants a fair and impartial trial according to the law and the evidence; and to the further question by the trial judge, "Will you and each of you do that?" they answered that they would. The fact most strongly urged, is the admission of four of these jurors that it would take evidence to change their opinions previously formed. In impaneling jurors courts should not too lightly consider the provision of the Constitution and statutes granting to those accused of crime trial by an "impartial" jury, and a jury free from exception. Article VI, Const. U. S., and sec. 3, chapter 159 Code W. Va. Neither of the jurors impaneled was specifically asked whether he was conscious of any bias or prejudice against the accused, as he should have been, perhaps; but his answers to the questions which were addressed to him, in connection with the other evidence on the subject, we think imply that each was free from all bias and prejudice, and was prepared to try the case as presented to him. In *State* v. *Schnelle,* 24 W. Va. 767, it was held that if a proposed juror shows to the satisfaction of the court on

his voir dire that notwithstanding a previously expressed opinion of the guilt or innocence of the accused, his mind is free from bias and prejudice, and the contrary is not shown, he is a competent juror and ought not to be rejected.

The close question presented here is, did the jurors who said it would take evidence to change their opinions thereby disqualify themselves to sit as jurors in the case? Having answered that they could and would give the prisoners a fair and impartial trial according to the law and the evidence, what did they mean by saying it would take evidence to change their previously formed opinions? They could not have meant that they would start upon the trial with any preconceived and decided opinion on the question of guilt or innocence of the defendants: they could have meant simply that if on the trial the evidence did not warrant conviction, their opinions based necessarily on newspaper reports or gossip in the county, tentative opinions, would be surrendered, and their verdict given according to the law and the evidence. We have perhaps written enough on this subject to render it a work of supererogation to write more. *State* v. *Schnelle, supra; State* v. *Baker,* 33 W. Va. 319; *State* v. *Hatfield,* 48 W. Va. 561; *State* v. *Johnson,* 49 W. Va. 684; *State* v. *Moneypenny,* 81 W. Va. 362; *State* v. *Lutz,* 85 W. Va. 330; *State* v. *Toney,* 98 W. Va. 236; *State* v. *Messer,* 99 W. Va. 241. The rule as most recently stated is that if the answers of the jurors are so unequivocal and satisfactory as to convince the trial court of the juror's fairness and impartiality, the reviewing court will not disturb the judgment below accepting the juror. *State* v. *Toney, supra.* To disqualify one proposed as a juror in a case like this, on account of a previously formed or expressed opinion, his opinion must have been deliberate and decided. But if he hesitates or is in doubt as to his ability to disregard such opinion and with an unbiased and unprejudiced mind to give the accused a fair and impartial trial, it would be error to accept him as qualified to try the case. In *State* v. *Messer,* we decided that a juror whose opinion was of such a decided character that he could not give due weight to the presumption of innocence of the accused and would not acquit unless the defendant should prove himself innocent,

was incompetent. . While some of the questions proposed to the jurors chosen in the present case were not as searching as might be desired, yet we can not say, after a careful consideration of their examination, that the court below committed any error in accepting them.

The next point of error to be considered relates to the admission in evidence of the several alleged confessions in writing of the defendants. The court, in the absence of the jury, heard all the evidence offered by the State and by the prisoners on the question of the admissibility of these confessions, and from it determined that they were admissible and proper to go to the jury on the question of their voluntariness and of the guilt or innocence of the prisoners. We have examined carefully all the evidence thereon submitted to the court and have concluded that no error was committed in admitting them.

It is well settled by the authorities that it devolves upon the court in the first instance to determine whether the confession of the accused was freely and voluntarily made, or was under duress and threats, or by inducement made or held out by some one in authority, of benefit or reward of a worldly or temporal character respecting his escape from, or in mitigation of, his punishment. *Ormohundro* v. *Com.*, 138 Va. 854; *Early* v. *Com.*, 86 Va. 921; *Smith* v. *Com.*, 10 Grat. 734; 16 C. J. p. 735, § 1513, and notes; and the burden of showing the qualifying facts respecting a confession of guilt is upon the State. *Ormohundro* v. *Com.*, and *Smith* v. *Com.*, *supra*. And where the court has determined from the evidence adduced on the facts relating thereto, that the confession is admissible, the appellate court will not disturb the judgment when supported by the evidence, though there be conflict therein; for in the end the question of the weight and sufficiency of the evidence to sustain the truth and verity of the alleged confession passes to the jury, who become thereby the final triers of the facts, and of the weight they will attach to such confession.

The pertinent facts relating to the confessions of the defendants are that a few days following the homicide they were arrested near their homes in Doddridge County and taken to

and incarcerated in the Harrison County jail, in separate cells, and were not allowed to communicate with each other while so imprisoned. Soon after the crime was committed the county court of Doddridge County employed, through a Pinkerton agency in Pittsburgh, an operative to investigate the crime and endeavor to establish the guilt or innocence of the accused. The detective agency detailed one Fenton, who arrived in Clarksburg about the middle of January following the homicide. He first reported to Mr. Strosnider, prosecuting attorney of Doddridge County, residing in Clarksburg. After doing so he made some preliminary inquiries, visited the scene of the homicide near Long Run in Doddridge County, and met and talked with various persons, and later he called at the jail in Clarksburg and separately interviewed the defendants, questioning them, first in the jail, then in the jailor's and sheriff's offices, but on account of interruptions in the jail and in the sheriff's office, he took them to the office of Mr. Strosnider, the prosecuting attorney. At the jail and in the sheriff's office, as well as at the office of the prosecuting attorney, he had the voluntary assistance, in his numerous interviews and inquisitions, of the witnesses Ash and Hill, Ash a lawyer, and Hill a salesman, formerly connected with the War Department, the Attorney General's Office, and the Department of Justice. Both say they were employed by no one to assist, but acted *pro bono publico* entirely, and received no reward therefor whatsoever, nor expected any. The evidence of these and other witnesses in the case shows, that the defendants were each, but separately, taken from the jail on a number of occasions, and examined, re-examined and cross-examined by Fenton and those who assisted him respecting their connection with the homicide, and their presence in the neighborhood, and their comings and goings in the vicinity of the Powell residence about the time of the homicide. Defendants all swear that these confessions were extorted from them by threats of violence and by actual personal abuse, and by representations by Fenton and others that it would be to their advantage in the punishment that might be inflicted upon them for their supposed offense, if they made these confessions; and that they were taken to and detained in the

prosecuting attorney's office many times, for extended periods, and abused, assaulted and insulted, until they could no longer endure their treatment, before they consented to make and sign their confessions. On the contrary Fenton and the others say they treated the prisoners kindly and well, fed them well and provided them with tobacco, cigars and cigarettes; which is in part admitted by defendants. The defendants attempted to corroborate their own testimony as to the rough treatment received, by some friends and relatives, and by some of their fellow prisoners in the jail, who swore that on their return to jail they bore some marks of violence on and about their eyes and lips, as if they had been struck. But Fenton, Ash, Hill and Strosnider positively deny abuse of any kind; and many other witnesses, including the sheriff and some of defendants' fellow prisoners, deny positively such abuse of the prisoners or of their persons, and swear that at no time did defendants complain of any such treatment or ask for protection against any such alleged maltreatment. On the contrary defendants admit good treatment as to food and drink, and cigars, tobacco and cigarettes.

That there was a long and tedious effort, covering several weeks, to obtain these confessions, is admitted, but those immediately engaged therein were not officers of the law, nor persons with authority to make promises of rewards of any kind therefor; they each positively deny any promise, say that they had no authority to make such representations.

The record fails to disclose the particular means or methods employed. On the trial defendants' counsel seem to have yielded without special objection to leading questions propounded by the witnesses; and the best we can make out of the testimony is that Fenton, specially employed, kept the prisoners apart in the jail, interviewed them separately, and did not allow either of them to know what he had gotten from the others. But after he had gotten together all the evidence obtainable on the outside tending to inculpate them respectively, he says he just laid his cards on the table, impliedly to convince them that he had enough evidence to establish their guilt of the offense without confessions, and that they might as well confess, as the other evidence he had would

convict them anyhow. The details of these efforts are not given. What particular questions were asked, or how answered by defendants, does not appear. It does appear that after the confessions were obtained, counsel for defendants were admitted to the jail and permitted to question the prisoners separately, but not together, and that they employed a stenographer to go with them and take down stenographically in narrative form their statements, not exactly as they responded, but as one of the attorneys dictated, all in an effort to develop as a fact that the confessions were obtained unlawfully, and as the defendants testified on the trial. The evidence shows that after the defendants had fully confessed, Fenton personally reduced their confessions to writing, and they were severally subscribed and sworn to, not before anyone engaged in the effort to obtain them, but each before a different notary public, each of whom was called as a witness by the State on the trial; and each swore positively that he had read to and explained to the affiant the nature of the confession, the meaning of the same, and that it would be used against him on the trial, and that each of the defendants freely and voluntarily signed his confession without any advice, promise or holding out of reward or personal advantage. Besides these confessions there was the evidence of at least one of the other prisoners that one of the defendants had admitted to him that defendants were guilty of the offense, but that they would not be able to prove it. One witness, W. P. Putnam, a young man living in the same neighborhood, swore that Roscoe Cross, while in company with the other defendants, left them and followed him into the toilet room at the railway station at Long Run about December 22nd, and proposed that Putnam join them in robbing old man Powell.

The defendants Cross and Elliott, as a part of their defense, sought to establish an alibi. They proved by themselves and other witnesses that on the afternoon of the homicide they were at Bridgeport, and that although they had boarded a freight train at that point early in the afternoon they could not, as the train ran that day, have reached the Powell home at Long Run in time to have participated in the

crime; but there is much evidence that all three of the defendants were at or near the scene of Long Run on that night; and from the evidence of the conductor of the train from Bridgeport, it appears that he was running under slow orders as he passed the Powell home, and that anyone riding the train could easily have alighted at that point. Each of the confessions gives the details of the crime, and if true as stated, the defendants were not absent from the scene of the tragedy on the day and night it occurred. So far as Richards is concerned, no attempt was made to put him in Bridgeport with the other defendants on the day of the killing. His own testimony and that of his mother, and of other witnesses, locate him very near the tragedy; and it is pretty clearly shown that he arranged to hide a pair of shoes in a nearby barn for the purpose of avoiding detection. Another fact relied on to impeach the confessions is that the alleged owner of the gun used swears that Richards did not borrow it from him, as stated in Richards' confession.

The prisoners had the advantage before the jury of all their evidence respecting the facts pertaining to the obtaining of the confessions, and their supposed absence from the scene of the crime, and the evidence bearing on the manner and methods of obtaining their confessions, and of their youth, and were found guilty by a jury of their own county. After carefully considering all the evidence, we are unable to say that the jury were not justified in their finding of guilt of the crime as charged. The evidence is very voluminous, and we shall not attempt to detail it further. That the defendants are guilty, the record leaves little, if any, room for doubt, and justice has no doubt been accomplished by the verdict and judgment imposed.

The jury were justified in finding that the confessions were freely and voluntarily made, and without promises of anyone in authority, or by anyone else for that matter, rendering them void. Persons engaged in ferreting out crime are justified in using all proper means and methods of locating the guilty parties, and may use proper means of obtaining confessions of guilt. The principal controversy was over the admissibility of the alleged confessions. To show their ad-

missibility it was necessary that the State establish the fact that they were obtained without duress, threats or promises of benefits, and that they were voluntary. All those having part in obtaining the confessions deny any such inducements or threats, and none of them had authority in that behalf. The verdict of the jury, to whom the questions of fact were submitted, must be regarded as finding against the accused on all these important questions. As stated, the burden was of course upon the State to show that the confessions were voluntary and not induced by any anticipated benefits. *Ormohundro* v. *Com., supra; Jackson* v. *Com.,* 116 Va. 1015. This burden, we think, was well discharged in this case. While the record shows that the prisoners were taken to the prosecuting attorney's office, as a matter of convenience, there is no substantial proof that he had anything to do with securing the confessions, or that he held out any inducements to the defendants to obtain them. They were made to the operative or detective in charge of the case, probably representing or employed by the county court. In *State* v. *Morgan,* 35 W. Va. 260, we held that a confession made to a private detective with no authority to make promises of help or immunity, was properly admitted in evidence. See, also, the cases from Virginia and West Virginia digested in 3 Enc. Dig. Va. & W. Va. Rep. p. 83. The fact of any promise or inducement made by those in charge of the investigation, as already stated, is denied; and the evidence of the State was, in the judgment of the jury, sufficient to overcome that of the defendants. In *Smith* v. *Com., supra,* it was decided that a confession is clearly admissible, though obtained by threats or inducements, if it was made to persons not in authority. Assuming that Fenton, Hall and Ash were engaged in discovering the criminals, and acting with apparent authority, they distinctly deny that they procured the confessions by any inducements, threats or promises; and whether they did or not was a question of fact in the first instance for the court on the admissibility of the confessions, and finally for the jury on the submission of the case to them. As was held in *State* v. *Goldizen,* 93 W. Va. 328, the bare fact that the confessions were made to a public officer, as a sheriff or a prosecuting attorney will

not render them inadmissible. The rule as stated in 16 C. J., p. 720, §1474, is that: "A confession is not rendered inadmissible by the mere fact that it was elicited by questions put by public officers or others, even though the questions assumed the prisoner's guilt, and although they were roughly asked; but the fact of interrogation may be taken into consideration in determining whether or not the confession was voluntarily made, and sometimes it, in connection with other circumstances, is sufficient to exclude a confession as having been made involuntarily." As Judge LIVELY well says in the *Goldizen case*, we do not wish to be understood as encouraging the practice of obtaining confessions by artifice or deceit, which in many cases cannot be too severely condemned, but the facts in this case all went to the jury under proper instructions, and we cannot discover any reversible error in the rulings of the court or in the verdict of the jury.

The remaining questions involve the instructions to the jury, given and refused. We have examined them and find no substantial error in the several rulings of the court thereon. The questions covered have so many times been ruled upon and decided that it is unnecessary to repeat the law pertaining thereto. Finding no reversible error, we are of opinion to affirm the judgment.

*Affirmed.*