STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
CHARLES M. WEBER, PLAINTIFF IN ERROR.

Submitted May 6, 1941—Decided October 17, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and
HEHER.

For the plaintiff in error, *Abraham M. Herman* (*Harold
Simandl,* of counsel).

For the State, *Daniel T. O'Regan,* prosecutor of the pleas,
and *Atwood C. Wolf,* assistant prosecutor.

The opinion of the court was delivered by

HEHER, J.   The writ presents for review a judgment of
conviction upon an indictment charging that on April 15th,

1938, plaintiff in error and Lake Intervale Corporation, "in connection with the issuance and sale of divers securities and bonds of the said Lake Intervale Corporation to one Daniel Walz, did use and employ deception, misrepresentation, concealment, suppression and fraud, in that" they "did then and there willfully, unlawfully, knowingly, designedly, falsely, deceitfully and fraudulently omit to disclose to the said" Walz "certain material" matters of "fact concerning the said securities and bonds  *  *  *, to wit," (first count) "that prior to the issuance and sale thereof to the said" Walz, the named corporate obligor "had defaulted in past due interest payments on the issue of securities and bonds" thus sold to Walz, and "the said securities and bonds  *  *  *  were in default and of little or no value," by means whereof the accused "did then and there issue and sell to the said" Walz "divers securities and bonds of" the corporation "to the amount of $1,500;" and also (second count) "that the said securities and bonds  *  *  *  were not a first lien on real property belonging to the" obligor "as nominated in the said securities and bonds," but "were junior in lien on said real property to a paramount mortgage lien amounting to upwards of $12,000," by means whereof the accused "did then and there issue and sell to the said" Walz "divers securities and bonds" of the corporation to the like amount.

There was a severance on the motion of the prosecutor of the pleas; and the trial proceeded as to plaintiff in error only. The jury returned a verdict of "guilty of violation of New Jersey Securities Law *R. S.* 49:1-2, 49:1-4;  49:1-25;" and the challenged judgment was entered thereon.

There are numerous assignments of error and specifications of causes for reversal. We shall consider only those based upon an instruction to the jury that plainly constitutes reversible error.

The trial judge gave to the jury a *verbatim* reading of sections 49:1-2, 49:1-3;  49:1-4 and 49:1-25 of the statute. He advised them that plaintiff in error was "charged with the crime specified within the meaning of the statute to which" he had "just referred and the pertinent parts of which" he had "just read to" them; and, after adverting to

the evidence and the duty of the jury to determine the facts, and defining reasonable doubt, he charged as follows:

"If, however, on considering all the evidence in the case and after deciding where the truth of the matter lies, you find that he has been proven guilty beyond a reasonable doubt of a violation of the statute, parts of which I read to you and which I will repeat to you again, your verdict should be a verdict of guilty as charged."

Thereupon, the judge again read section 49:1-4; and he concluded thus:

"Now if this defendant has not been proven guilty beyond a reasonable doubt of a violation of that statute, then your verdict should simply be a verdict of not guilty. On the other hand, if, as I have said, you are satisfied that he did violate that statute and it has been proven to your satisfaction beyond a reasonable doubt, then your verdict will be a verdict of guilty as charged."

Thus it is that the jury were directed that it was their duty to return a verdict of guilty, if they found that plaintiff in error had committed any of the offenses denominated misdemeanors by the statute; and the verdict, as recorded, is suggestive of such comprehension of the instruction.

The gist of the offenses so separately laid in the indictment is a willful and fraudulent omission "to disclose" certain alleged material matters of fact relating to the securities sold, i. e., (a) default "in past due interest payments on the issue of securities and bonds then and there sold" to Walz, and their worthlessness, and (b) the existence of "a paramount mortgage lien" on the "real property belonging" to the corporate obligor. By sections 49:1-4 and 49:1-25, the use of "any deception, misrepresentation, concealment, suppression, fraud, false pretense" or "false promise" is made a misdemeanor; and section 49:1-2 defines "fraud" as including, inter alia, "in addition to the usual construction placed on it and accepted in courts of law and equity," (a) "Any misrepresentation by word, conduct or in any manner of any material fact, either present or past, and any omission to disclose any such fact;" (b) "Any promise or representation as to the future which is beyond reasonable expectation or is

unwarranted by existing circumstances;" (d) "Generally any course of conduct or business which is calculated or put forward with intent to deceive the public or the purchaser of any security as to the nature of any transaction or the value of such security;" and (e) "Any artifice, agreement, device or scheme to obtain money, profit or property by any of the means herein set forth or otherwise prohibited by this chapter."

The State adduced evidence tending to show that plaintiff in error induced Walz to exchange certain "oil royalties" (purchased by him from plaintiff in error some three years before) for the securities in question, representing that, "by making the exchange," he (Walz) "would get" his "principal back much sooner than if" he "held on to the oil royalties," and he "would also get eight per cent. interest a year;" and it was (and is) the State's contention that thereby plaintiff in error made "promises and representations as to the future which were not only beyond reasonable expectation, but entirely unwarranted by the existing circumstances," and therefore he was guilty of misrepresentation within the intendment of the cited statutory provisions. It is said that, since the indictment averred "misrepresentation," the State was justified in "charging," as it did, and therefore "entitled to prove," that plaintiff in error "misrepresented that he, Walz, actually would receive eight per cent. interest on the bonds which he was about to purchase, and that he also would receive his principal much more quickly than by retaining the oil royalties he was to exchange for them," and so this particular piece of evidence was admissible in proof of "a misrepresentation coupled with an omission to disclose, as charged in the two counts of the indictment." The further argument is made that, inasmuch as plaintiff in error was found "guilty as charged" (as noted, such is not the language of the verdict), and the indictment "contained two separate counts, it is apparent that the defendant was found guilty of both, *i. e.*, that the crime was committed in two separate ways." And the trial judge likewise entertained this view of the issue. In admitting this evidence, he said: "If it was represented to him [Walz] he would be paid eight

per cent. and he didn't get his eight per cent., isn't that for the jury to say whether or not it was false representation?"

This conception is at variance with the issue framed, *i. e.*, whether plaintiff in error omitted "to disclose" the "material facts" set out in the indictment. That was the allegation he was called upon to meet. The particularization rendered the general charge specific; and it was incumbent upon the state to prove the charge as thus laid. *Linden Park Blood Horse Association* v. *State*, 55 *N. J. L.* 557.

The verdict is the definitive answer to the jury concerning the matters of fact committed to them for their determination. *State* v. *Williams*, 89 *N. J. L.* 234. And first principles dictate that it be sufficiently certain and specific to identify the crime and be responsive to the issue raised by the indictment and the plea. If the language employed be such as to engender a reasonable doubt as to whether the accused has been convicted of the offense pleaded in the indictment, the verdict is insufficient.

Thus it is that the judgment under review is tainted with prejudicial error in matter of substance, and must be reversed. We take occasion to reiterate the observation of Mr. Justice Swayze for our court of last resort: "Desirable as it is to punish crime, it is still more important to administer justice according to law; when that is once abandoned, we are adrift without chart or compass." *State* v. *Levin*, 92 *N. J. L.* 553.

The judgment is accordingly reversed, and a *venire de novo* awarded.