Naomi Nicholas *v.* Granite State Fire Insurance Company

(No. 9385)

Submitted January 17, 1943. Decided February 9, 1943.

350

*Steptoe & Johnson, Stanley C. Morris, W. E. Miller* and *E. Loyd Leckie,* for plaintiff in error.

*Okey P. Keadle* and *David F. Sheets,* for defendant in error.

RILEY, PRESIDENT:

Plaintiff, Naomi Nicholas, filed her notice of motion for judgment in the Circuit Court of Cabell County against Granite State Fire Insurance Company, for the recovery of $2,000.00, the face amount of a fire insurance policy covering her dwelling house in the City of Huntington. Defendant prosecutes this writ of error to a judgment in plaintiff's favor, based upon a jury verdict in the full amount of the policy.

The policy in question covered a four-room, one-story, metal-roofed, frame dwelling house. On July 18, 1941, a fire occurred in the insured premises. Plaintiff and defendant having failed to agree as to the amount of the

loss, the insurer, by registered mail, dated July 30, 1941, made a formal demand upon the plaintiff for an appraisal of the loss occasioned by the fire, pursuant to the terms of the policy which provides for arbitration where the contracting parties are unable to agree on the amount of loss. Plaintiff, contending that she had suffered a total loss and therefore no appraisement was necessary, refused to comply with defendant's demand.

At the outset of the trial the parties hereto stipulated that the single issue before the jury was "whether or not the loss to plaintiff's dwelling insured by defendant was a total loss". This stipulation is in conformity with Code, 33-4-9, which provides that in case of total loss by fire or otherwise, as stated in the policy, on any real estate insured, the insurer shall be liable for the whole amount of insurance stated in the policy; and in case of partial loss not to exceed the whole amount of the insurance stated in the policy. This section of the Code, commonly known as the valued policy statute, was first enacted into the law of this State by Acts, West Virginia Legislature, 1899, Chapter 33. The provision of this section as to total loss has remained in the statutory law of this State unamended from the time of its first enactment until the present day; and this Court held in *Hinkle* v. *North River Insurance Co.,* 70 W. Va. 681, 75 S. E. 54, and *Null* v. *The Stuyvesant Insurance Co.,* 114 W. Va. 179, 171 S. E. 416, that notwithstanding that the Acts of the West Virginia Legislature, 1907, Chapter 77, Section 68, and Acts, 1923, Chapter 18, Section 68 (Code, 33-4-7), furnish a standard form of fire insurance policy wherein it is provided that "insurance to the extent of the actual cash value (ascertained with proper deductions for depreciation) of the property at the time of loss or damage, but not exceeding the amount which it would cost to repair or replace the same with material of like kind and quality", and require appraisal and arbitration where there is disagreement between the parties on the question of amount of loss, the valued policy act was not repealed and the provisions thereof not superseded by the provisions of the policy relating to arbitration where there was, in fact, a total loss. In the *Hinkle*

case it was held, Pt. 3, syl., that "where loss of a house by fire is total, the insurance company has no right to demand arbitration of the amount of the loss, though the policy provides for it". See also *Ritchie County Bank* v. *The Fireman's Insurance Co.,* 55 W. Va. 261, Pt. 4, syl., 47 S. E. 94; *Teter* v. *Franklin Fire Insurance Co.,* 74 W. Va. 344, Pt. 2, syl., 82 S. E. 40; *Shinn* v. *West Virginia Insurance Co.,* 104 W. Va. 353, 140 S. E. 61; and *Davis* v. *Safe Insurance Co.,* 120 W. Va. 505, 199 S. E. 364, which applies the valued policy statute to a mutual insurance policy.

So the factual question, presented to the jury in this case, was whether the loss was total or partial. If total, and barring reversible error in the case, the plaintiff is entitled to recover $2,000.00; but if partial, because of her refusal to resort to arbitration under the provisions of the policy, she is not entitled to recover.

The term "total loss" has been defined variously by the courts of the country. See generally, Couch on Insurance, Sections 1692, 1693. In this State, the term has been judicially determined thus: "Under a fire insurance policy, to make a loss by fire total under the valued policy act, the building need not be fully destroyed and extinguished. If its identity is gone, if its remnants cannot be used as a basis of repair or restoration, the loss is total, calling for the full payment of the amount of insurance fixed by the policy." *Hinkle* v. *North River Insurance Co., supra,* Pt. 4, syl. In *Teter* v. *Franklin Fire Insurance Co., supra,* pt. 5, syl., this Court held:

> "If the walls of a brick building, although standing, have been injured and caused to lean so much out of plumb, as a direct result of the fire which burned out a large portion of the floors and wood work within, that a prudent man would not use any portion of them as a basis of restoring the building, the loss is total."

In the ascertainment of total loss the test is "whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before the injury, would, in proceeding to restore the building to its original

condition, utilize" as the basis for such restoration the remnant of the structure standing. If such remnant is reasonably adapted for use as such basis, there is no total loss. *Providence Washington Insurance Company* v. *Board of Education of Morgantown School District*, 49 W. Va. 360, Pts. 3, 4, syl., 38 S. E. 679.

Because the verdict of the jury was in plaintiff's favor, it is proper that the evidence be reviewed in the light most favorable to plaintiff's theory of the case.

Several witnesses, who have inspected the property, testified in plaintiff's behalf. Robert E. Washington, an architect of thirty years' experience, in response to the question, "Will you please give to the jury your opinion, from what you have seen of this building, as to whether or not a prudent owner who had no insurance on his property in replacing a new building on the property, would use the remnants of this building as a basis of repair, or whether he would build anew with the exception of the foundation," testified, without objection, "My opinion is that a prudent builder, owner, for the type of building, that he would not use the old material." He testified further, "I would advise that the whole structure would be removed, because if a prudent owner or myself would really want a piece of property that would meet the standard, that would keep up, that it would not decrease in value, I would destroy the whole." D. E. Bailey, an experienced building contractor, superintendent, engineer and workman for about fifteen years, testified, "If I was the owner of that house, without any insurance, I wouldn't undertake to repair it", and that "any other prudent owner would rebuild rather than repair." G. R. Danforth, experienced in carpentry work since 1913, and J. D. Cober, having twenty-five years' experience in carpentry work, testified that a prudent owner of the property, who had no insurance, would tear down the present structure and put up a new building.

The witness Bailey, on rebuttal, further testified that it was not good building construction to reinforce charred joists by placing new ones against them, and that one

Rinard, of the Fire Companies Adjustment Bureau, defendant's agent, had in connection with another fire loss refused to permit witness to repair a similar house in that manner.

E. P. Leach, E. F. Damron, and W. L. Robinson, building contractors, who, at Rinard's request, had inspected plaintiff's house after the fire, testified for defendant, that the loss was a partial one, the latter two suggesting that they would reinforce the charred joists with new pieces.

The record discloses that the building, with the exception of a toilet and small lean-to in the rear, was damaged badly by fire on the inside. The windows were destroyed, most of the studding, joists and rafters charred, and the inside walls damaged and burned. The galvanized roof was so heated and burned from the inside that it was raised in several places. From the photographs introduced in evidence, it appears that the outside of the building above some of the windows and near the roof was either charred or smoke-stained. We think, from a consideration of the evidence, the jury was justified in finding that plaintiff sustained a total loss as a result of the fire.

The several grounds of error assigned by defendant's counsel will be considered *seriatim*. Error is assigned to the admission of the testimony of certain of plaintiff's witnesses as to what "they" would do with the property if it belonged to them personally. As these witnesses further testified as to what a prudent owner, without insurance, would do, we see no prejudice to their testimony. Defendant complains also of the trial court's admission of the testimony of plaintiff's witnesses to the effect that the "loss was total" because the repairs would have resulted in a "patch work job". This assignment is likewise without merit. The third assignment of error goes to the admission of evidence concerning the Huntington building code, which code was not in evidence. The answer to this assignment of error lies in the fact that one of defendant's witnesses likewise on direct examination based his opinion on the requirements of that code. The defendant cannot, in the light of the testimony of its own witness, claim

prejudice. The fourth assignment of error complains of evidence admitted on rebuttal, which was repetitious of plaintiff's evidence in chief. We say, in answer to this assignment of error, as this Court has said many times, that a trial court has a wide discretion in the control and conduct of jury trials which, in the absence of the abuse thereof, will not be disturbed by this Court on writ of error. *State* v. *Williams,* 49 W. Va. 220, 38 S. E. 495.

As a fifth assignment of error; defendant cites the ruling of the trial court in admitting Bailey's testimony concerning Rinard's instructions as to repair of damage caused by another fire to other insured premises. Defendant asserts that the evidence was inadmissible because it was *res inter alios acta alteri nocere non debet* (things done between strangers ought not to injure those who are not parties to them). This rule relates only to the law of evidence (*Carroll* v. *Rye Tp.,* 13 N. D. 458, 101 N. W. 894, 897), and directly invokes the question of relevancy. It is firmly established in the law in this State by several cases: *Mitchell* v. *Metropolitan Life Ins. Co.,* 124 W. Va. 20, 18 S. E. (2d) 803, Pt. 3, syl.; *Levine Brothers* v. *Mantell,* 90 W. Va. 166, 111 S. E. 501; *Fink* v. *Thomas,* 66 W. Va. 487, 66 S. E. 650, 19 Ann. Cas. 571; *Hartman* v. *Evans,* 38 W. Va. 669, 18 S. E. 810; *Watts* v. *State,* 5 W. Va. 532. Plaintiff seeks to have the evidence held admissible on the basis that under Code, 33-4-7, the policy involved in the former fire has the same provisions as the instant policy and Rinard, the representative of the adjustment bureau, is the same person who instructed the witness Bailey as to the former fire and gave the instructions in the instant case. This is correct, but is it sufficient to make the evidence admissible? We think not. The record does not show the adjustment bureau's principal in the other fire, or that the insurer in the case of that fire had the same standards of adjustment as those entertained by the instant insurer. Had the same insurance company been involved in both cases and there was a common agency, a different situation would be presented; but so far as the instant record is concerned the insurer involved in the

earlier fire may have been other than defendant in this case. In the latter event the transaction was among other parties, which, under the rule of evidence, should not be permitted to work disadvantage to defendant here. Clearly, the evidence is incompetent, involves a material issue, and, we think, is prejudicial to defendant. It therefore constitutes reversible error. *Mitchell* v. *Metropolitan Life Ins. Co., supra.*

For the foregoing reasons, we reverse the judgment of the trial court, set aside the verdict, and grant a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*