STATE OF WEST VIRGINIA

*v.*

SALVATORE GARGILIANA

(No. 10533)

Submitted April 28, 1953. Decided June 9, 1953.

*John A. Cain,* for plaintiff in error.

*John G. Fox,* Attorney General, *James C. Blanton,* Special Assistant Attorney General, for defendant in error.

GIVEN, JUDGE:

Defendant, Salvatore Gargiliana, was convicted before a jury, in the Circuit Court of Randolph County, upon an indictment charging him with having, "on the _____ day of _____ , 1952, * * * unlawfully and wilfully", upon a named person, made "an assault with intent to unlawfully, feloniously and wilfully commit the detestable and abominable crime against nature, by then and there * * * attempting * * * to feloniously and wilfully have carnal knowledge" of the body of that person, whereby defendant did "attempt to unlawfully, feloniously and wilfully have carnal knowledge of the body of the said" person, by the anus. The verdict of the jury, properly signed, reads: "7-8-52 Your Honor, we, the jury find the defendant guilty as charged." A motion of defendant to set aside the verdict, timely made, was overruled, and a judgment was entered sentencing defendant to the state penitentiary for a term "of one to ten years". This Court granted a writ of error.

The propositions involved in the several assignments of error made by defendant are: (1) Defendant was not afforded an impartial panel of twenty jurors from which the jurors to try the case could be selected; and (2) the State was permitted to offer evidence of the commission by defendant of numerous separate and distinct violations, for some of which he was then under indictment.

It appears that at the same term of court at which this case was tried, defendant was tried for a different violation, of the same type as that involved in the instant proceeding, and that such trial resulted in failure of the jury to agree upon a verdict. Four of the panel of twenty called in the instant case were in the court room and heard at least part of the evidence offered against defendant at the previous trial. At least one of the four had "talked it over with several people. Just heard them talk about the case quite a bit. I didn't hear all of the

evidence, of course." This juror was asked by counsel for defendant the following question: "In that discussion of the case did you formulate an opinion that would be such that you could not render a fair decision or that might bias you in rendering a decision in this case for or against the defendant?"; to which question the juror gave the following answer: "Well, the only way it would be, maybe I heard something that wouldn't be brought out in the case, or something of that kind. It might be." The four jurors, being further questioned by the court upon their *voir dire,* answered to the effect that they had formed no fixed opinion as to the guilt or innocence of defendant. The court refused to strike any of the four jurors from the panel of twenty, and defendant contends that he could not have eliminated any of the four from the panel by exercise of his right of peremptory challenges, for the reason that all of such challenges were used in eliminating other jurors whom he considered even more objectionable.

In *State* v. *Johnson, et al.,* 49 W. Va. 684, 39 S. E. 665, this Court held:

"2. A person charged by indictment with felony is entitled under the law to a panel of twenty jurors, each and all of whom shall be 'free from exception,' from which panel the jury for the trial of the case is to be selected under section 3, chapter 159, Code.

"3. In order that one who has formed or expressed an opinion as to the guilt or innocence of the accused may be accepted as a competent juror on such panel, his mind must be in condition to enable him to say on his *voir dire,* unequivocally and without hesitation, that such opinion will not affect his judgment in arriving at a just verdict from the evidence alone submitted to the jury on the trial of the case."

In *State* v. *Dushman,* 79 W. Va. 747, 91 S. E. 809, this Court held: "1. By section 3, chapter 159, Code 1913, one accused of a felony is entitled as a matter of

right to a panel of twenty jurors, unexceptionable under the rules of the common law, before being called upon to exercise his right of peremptory challenge." In *State* v. *Schnelle*, 24 W. Va. 767, the Court stated, at page 782: " * * * unless the proposed juror understands his own mind on the question, and can promptly say, that it is at that time free from prejudice, and that his mind is entirely free to pass upon the guilt or innocence of the accused upon the evidence submitted to him as such juror, he is not a competent juror and should be ordered to stand aside * * *." See *State* v. *Messer*, 99 W. Va. 241, 128 S. E. 373, 40 A. L. R. 608; *State* v. *Richards*, 101 W. Va. 136, 132 S. E. 375.

The determination of the qualification of a juror is a problem often difficult to solve. The fact sought to be established, whether the juror may be biased or prejudiced, rests alone with the proposed juror, and often he may be unable to honestly determine whether he would be unduly influenced by certain facts or situations in consideration of evidence to be offered. Usually the answer is left to the sound discretion of the trial judge. *State* v. *Beacraft*, 126 W. Va. 895, 30 S. E. 2d 541; *State* v. *Camp*, 110 W. Va. 444, 158 S. E. 664. His experience in such matters, often aided by some knowledge of the character, abilities and habits of the particular juror, coupled with the fact that he observes the demeanor and expressions of the juror on the *voir dire* examination, are justifiable reasons for vesting wide discretion in him. The decisions usually hold, however, that the answer of a prospective juror, upon his *voir dire* examination, to the effect that he is not prejudiced or biased, is not controlling. In 50 C. J. S., Juries, Section 241, it is stated: "A juror's statement as to whether or not he has an opinion and whether or not it will affect his verdict is not conclusive on the question of his competency." In *State* v. *Camp*, 110 W. Va. 444, 158 S. E. 664, we held: "2. The fact that a venireman has expressed an opinion as to the guilt or innocence of the accused is not controll-

ing in determining the qualification of such venireman to sit as a juror in the trial. The deciding factor is whether without bias or prejudice he can render a verdict solely on the evidence, under the court's instructions, disregarding any prior opinion which he may have entertained." See *State* v. *Beacraft,* 126 W. Va. 895, 30 S. E. 2d 541; *State* v. *Dephenbaugh,* 106 W. Va. 289, 145 S. E. 634; *State* v. *Richards,* 101 W. Va. 136, 132 S. E. 375; *State* v. *Larue,* 98 W. Va. 677, 128 S. E. 116; *State* v. *Toney,* 98 W. Va. 236, 127 S. E. 35; *State* v. *Hatfield,* 48 W. Va. 561, 37 S. E. 626.

One of the four jurors who were permitted to try the case over the objection of defendant, stated, concerning the charge for which defendant was being tried, that he had "talked it over with several people". When asked whether he might have become biased against defendant by reason of what he had heard, he answered: "Well, the only way it would be, maybe I heard something that wouldn't be brought out in the case, or something of that kind. It might be." These statements show doubt in the mind of the juror. The statements, coupled with the fact that defendant had heard part of the evidence given at the prior trial and with the fact that three other jurors had heard part of such evidence, make it clear, we think, that these four jurors should have been discharged from the panel of twenty. At least, we think, it was prejudicial error to permit the juror whose statements are quoted above to serve at the trial. Having expressed doubt as to whether he might be influenced by what he had heard, his denial of any fixed opinion should not have been permitted to control the determination of his competency.

The State, in introducing its evidence in chief, introduced five witnesses, each of whom testified to the fact that defendant, on numerous occasions, had committed with them the precise type of violation as that charged in the indictment upon which defendant was being tried, for some of which offenses defendant was then under

indictment. Apparently some of such violations were committed prior, and some subsequent, to the date of the violation for which defendant was then being tried. The State contended, at the time of the trial, that such evidence was admissible "to show a series of acts occurring over a period of time". The State now contends that the evidence was admissible as tending to show "a scheme or system of action to show the defendant had a tendency to commit certain acts". The trial court at first rejected the evidence so offered, but later admitted it, and instructed the jury, in relation thereto, as follows: "Gentlemen of the jury, at the recess a short time ago an objection was made, which was sustained by the Court, to the admission of certain testimony by Robert Marco, the witness now on the stand. That evidence of Marco will be admitted for one purpose, and one purpose only—not for the purpose, gentlemen, of establishing the act, if there was an act, between * * * [the prosecuting witness] and Salvatore Gargiliana—it will be admitted at this time to show, if it does show, any method or scheme or connected acts on the part of Salvatore Gargiliana in the general commission of offenses of this nature, & is not in any manner to be taken as proof by the jury of this one charge. This testimony is admitted for the purposes stated, and the evidence of this witness will remain in, providing that it is connected with the other charge in time, place and manner."

In *Watts* v. *The State*, 5 W. Va. 532, this Court held: "Evidence of a distinct, substantive offense cannot be admitted in support of another offense." The holding is approved in *State* v. *Lewis*, 133 W. Va. 584, 57 S. E. 2d 513; *State* v. *Craig*, 131 W. Va. 714, 51 S. E. 2d 283; *State* v. *Light*, 127 W. Va. 169, 31 S. E. 2d 841; *Nicholas* v. *Insurance Co.*, 125 W. Va. 349, 24 S. E. 2d 280; *State* v. *Coleman*, 96 W. Va. 544, 123 S. E. 580; *Hollen* v. *Crim and Peck*, 62 W. Va. 451, 59 S. E. 172; 20 Am. Jur., Evidence, Section 312.

In *State* v. *Geene*, 122 W. Va. 51, 7 S. E. 2d 90, the

Court, in considering the same rule, stated: "To the general rule excluding acts of a defendant, not charged in the indictment, there is an exception as well grounded as the rule itself. The exception is this: Evidence may be admitted of other similar acts so intimately connected with the alleged crime under investigation as to indicate a general design or system, inclusive of the specific crime charged. Consult: *State* v. *Johnson,* 105 W. Va. 598, 143 S. E. 352; *State* v. *Rush,* 108 W. Va. 254, 150 S. E. 740; *State* v. *Adkins,* 109 W. Va. 579, 155 S. E. 669; *State* v. *Camp,* 110 W. Va. 444, 158 S. E. 664; *State* v. *Leatherwood,* 112 W. Va. 339, 164 S. E. 295. Such evidence may be in respect of subsequent acts as well as contemporaneous or prior ones * * *." See *State* v. *Leatherwood,* 112 W. Va. 339, 164 S. E. 295; *State* v. *Adkins,* 109 W. Va. 579, 155 S. E. 669.

The exception to the rule applied in the *Watts* case is recognized generally. 22 C. J. S., Criminal Law, Section 688, states: "As a general rule, evidence of other crimes than that charged is competent when it tends to establish a common scheme, plan, system, design, or course of conduct, at least where such other crimes are similar to, and closely connected with, the one charged, and were committed at about the same time or at a time not too remote. Another statement is that evidence of other crimes is admissible to prove the crime charged when it tends to establish a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other or others."

In *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. 2d 553, 163 A. L. R. 1265, this Court held: "3. In a criminal case proof of another offense chargeable to the defendant is admissible to show motive or intent, if such other offense is similar and near in point of time to, has some logical connection with, and tends to establish the commission of, the specific offense charged against the defendant, and indicates that such specific offense is part of a system of criminal action."

The *Hudson* case was followed in *State* v. *Lewis*, 133 W. Va. 584, 57 S. E. 2d 513. In *State* v. *Evans,* 136 W. Va. 1, 66 S. E. 2d 545, it was held: "2. In a prosecution for criminal abortion, other and similar acts may be shown when closely connected in point of time, which, if true, disclosed a criminal intent on the part of the defendant to commit the act charged. Such acts may be prior to or contemporaneous with the act charged in the instant indictment. Subsequent acts may likewise be shown when accompanied by evidence of prior or contemporaneous acts of like nature." The Court carefully pointed out: "It is thus seen that intent is an integral part of the crime of abortion. Though the defendant in the instant case denies doing any act or applying any treatment for the purpose of causing an abortion on the prosecutrix, we think such denial put in issue the intention of the defendant, when he treated the prosecutrix' genital organs, as he testified he did." In the opinion in that case the Court also carefully warned: "We are impelled to remark that evidence of other acts, though similar and closely connected in point of time to the one for which accused is being tried, unless carefully limited, may constitute an attack upon the character of the defendant and generate in the minds of a jury the idea that a defendant, being guilty of other similar acts, though the evidence is not sufficient to establish the criminal act for which he is being tried, they are justified in returning a verdict of guilty. But we think that in a case of abortion, where the line between criminality and legitimate professional practice is hazy and indefinite, intent may be determinative of innocence or guilt. Similar acts performed on other persons, resulting in criminal abortions, show intent, when closely connected in point of time. The interests of defendant with reference to such testimony were fully protected by the instructions of the court, and the evidence of other and similar alleged abortions was properly restricted."

*State* v. *Adkins,* 109 W. Va. 579, 155 S. E. 669, well

illustrates the application of the exception to the general rule denying the admission of evidence of other crimes. In that case defendant was charged with operating a moonshine still. Subsequent to the date of the crime for which he was being tried, defendant was found at the place of manufacture, a secluded spot on top of a high knob, but denied manufacturing whiskey, stating that he went to the spot for the purpose of persuading others to cease manufacturing. Other facts indicated that defendant was assisting in the manufacturing at the time of the subsequent violation. The Court stated: " * * * Each one of the foregoing correlations may be explained on a hypothesis not connecting defendant with the operation on February 10th; but the series of correlations is so exceptional that it tends to establish that connection. The weight of that tendency was of course a question for the jury."

The instant case is very different. The crime committed is not part of any scheme or plan, and the separate and distinct crimes proved have no connection with it. No scheme or plan was in issue before the jury. Neither was intent to commit the crime charged actually in issue, since intent is inherently a part of the crime charged. Nor was motive involved. Regardless of motive, the acts charged as committed by defendant would constitute an offense under the statute. It is true, of course, that violations proved were of the same type or nature; but similarity in type of distinct and separate violations constitutes no basis for admission of such evidence. To admit such evidence on that basis would amount to making the exception the general rule. Defendants could then be convicted of violations merely by evidence relating to separate and distinct crimes. Clearly, evidence of the separate and distinct violations, whether committed before or subsequent to the violation for which defendant was being tried, was prejudicial. Since the Court reaches this conclusion, we deem it unnecessary

to further mention the fact that defendant was under indictment for some of the other violations proved.

Inasmuch as the State may elect to again try defendant upon the indictment in this case, we think it proper to point out certain matters which appear upon the face of the record. It will be noticed that the indictment does not charge defendant with having committed the crime of sodomy, but with an attempt to do so. Code, 61-8-13, defines the crime of sodomy and fixes the punishment therefor at "not less than one nor more than ten years". That section does not make an attempt to commit sodomy a crime. Neither does any other statute specifically do so. Code, 61-11-8, provides in part: "Every person who attempts to commit an offense, but fails to commit or is prevented from committing it, shall, where it is not otherwise provided, be punished as follows: If the offense attempted be punishable with death, the person making such attempt shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than five years. If it be punishable by confinement in the penitentiary, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in jail not less than six nor more than twelve months, and fined not exceeding five hundred dollars * * *." As above noticed, the sentence imposed upon defendant was that fixed by the statute for sodomy.

The indictment refers to the violation for which defendant is charged as being "the detestable and abominable crime against nature". Ordinarily, surplusage contained in an indictment may be disregarded. That rule does not apply, however, where the surplusage is prejudicial to defendant. See *State* v. *Boggs*, 103 W. Va. 641, 138 S. E. 321; 42 C. J. S., Indictment and Information, Section 155. On the present record this court can not, and has not attempted to, decide whether the language used in the indictment constitutes such prejudice as to render the indictment objectionable, or to what extent the surplusage may affect the validity of the indictment.

As noticed above, the indictment charged defendant with having committed one crime on "the _____ day of . _____ ___ __ ., 1952". The State proved three separate and distinct crimes committed by defendant with the same boy, and none was identified as having been committed on any certain day or month. The boy was the only witness who testified to the acts constituting the violations. When asked as to the time of the first violation, he answered: "Well, last summer, I guess." He testified that the second violation was committed "Two or three months later", and that the third violation was committed "About four months ago, I guess." The verdict simply showed defendant "guilty as charged." It does not indicate which one of the three violations the jury intended to find defendant guilty. The violation of which he was found guilty was in no manner identified. In such circumstances, how can the defendant or the State know of what violation defendant was convicted? In the event defendant should be again indicted for the alleged violation, how can he plead former jeopardy? See 22 C. J. S., Criminal Law, Section 280; *State* v. *May*, 111 W. Va. 118, 160 S. E. 918. *In State* v. *Thompson*, 26 W. Va. 149, we held that an indictment which charged a misdemeanor was committed "on the _____ day of ___ ___ _____ , 1881", was good on demurrer, the indictment having been found in that year. In *State* v. *Crummitt*, 129 W. Va. 366, 40 S. E. 2d 852, we held: "1. A warrant, dated September 18, 1944, on which an accused is tried, as distinguished from a warrant of arrest, which charges that the accused did knowingly and unlawfully keep, maintain and operate a place of prostitution 'on the _____ day of _____ ___, 1944', substantially follows the language of the statute describing that crime, and is sufficient upon a motion to quash." One crime only was involved in each of those cases. In each it was certain that the verdict was responsive to the indictment. These cases are not authority for upholding the validity of a verdict where it is not responsive to the pleading. A defendant is entitled to know of what crime he is charged

and, also, of what crime he has been convicted. In 23 C. J. S., Criminal Law, Section 1400, it is stated that "Accused cannot be charged with one crime and convicted of another merely because the latter is developed out of the proof, which fails to establish the crime charged in the indictment * * *." In *State* v. *Staley*, 45 W. Va. 792, 32 S. E. 19, this Court, in considering the indefiniteness of the indictment, approved the following statement of Judge Moncure in *Hoback* v. *Commonwealth*, 28 Gratt. 922: "A verdict of a jury in a criminal case must always be read in connection with the indictment. And if it be certain, upon reading them together, what is the meaning of the verdict, it is sufficiently certain." See *State* v. *Arbruzino*, 67 W. Va. 534, 68 S. E. 269; *State* v. *Moneypenny*, 81 W. Va. 862, 94 S. E. 540. In *State* v. *Frey*, 92 W. Va. 323, 114 S. E. 681, the indictment charged the defendant with an attempt to commit murder. The verdict read: "We the jury find the defendant guilty". The Court stated: "The verdict is fatally defective by reason of uncertainty in its terms. An attempt to commit a crime punishable with death, such as murder of the first degree is, constitutes a felony, punishable by confinement in the Penitentiary. An attempt to commit an offense punishable by confinement in the Penitentiary, such as second degree murder, is a misdemeanor punishable by confinement in the jail of the county. Code, ch. 152, sec. 9. In as much as both offenses are charged in an indictment drawn as this one was, the verdict merely finding the accused guilty, is clearly defective and indefinite and fails to inform the court of the exact nature, character and identity of the offense committed. If the jury had found the defendant guilty as charged in the indictment, the verdict might have been sufficiently certain, for it may have been proper to read the indictment in connection with it and in aid of its interpretation. *Moody* v. *State*, 1 W. Va. 337; *State* v. *Vineyard*, 85 W. Va. 293 * * *." In *State* v. *Doolittle*, 58 Idaho 1, 68 P. 2d 904, the Court held: "2. The information, verdict and judgment in a criminal prosecution

should be sufficiently definite, certain and specific to identify crime involved." See *State* v. *Friedley,* 73 W. Va. 684, 80 S. E. 1112; *State* v. *Weber,* 127 N. J. L. 274, 22 A. 2d 191.

The judgment of the Circuit Court of Randolph County must be reversed, the verdict of the jury set aside, and defendant awarded a new trial.

> *Reversed; verdict set*
> *aside; new trial awarded.*