# CHARLESTON.

## STATE v. WHITE.

### Submitted January 15, 1918.   Decided January 22, 1918.

1. CRIMINAL LAW—*Homicide—Instruction—Degree—Evidence.*

    In a trial for murder, where the uncontradicted evidence proves there was no combat between defendant and deceased but only angry words when defendant shot and killed deceased, an instruction to the jury, stating, in effect, that where a homicide is proven, the presumption is that it is murder in the second degree, and if the State would elevate the crime, the burden is on it to show that it was murder in the first degree, and on the defendant to show it was without malice and, therefore, only manslaughter, or that he acted lawfully, and that, in arriving at a verdict, "as to the degree of guilt, if any, the jury should take into consideration all the evidence, both for the State and defense," was properly given. (p. 518).

2. SAME—*Trial—Instruction.*

    An instruction, not binding, correctly stating the law upon one theory of the case, is not erroneous because it does not give the law applicable to some other phase of the case. (p. 519).

3. HOMICIDE—*Malice—Manslaughter—''Provocation.''*

    Where a homicide has been committed with a deadly weapon, proof of mere words, however insulting or opprobrious, is not sufficient provocation to purge the crime of malice and reduce it to manslaughter. (p. 519).

4. SAME—*Evidence—Verdict.*

    A case in which the only verdict, warranted by the evidence, is one of acquittal, or one of guilty of murder either in the first or second degree. (p. 519).

5. WITNESSES—*Cross-Examination—Other Offenses—Impeachment.*

    A defendant testifying in his own behalf, is protected, on his cross-examination, by the same rules and principles respecting the admissibility of evidence, that apply to other witnesses; and it is improper to require him to answer the question, whether he had not been convicted of another offense, having no semblance to, or connection with the crime for which he was being tried, for the purpose of impeaching his testimony. (p. 520).

6. CRIMINAL LAW—*Harmless Error—Admission of Evidence.*

    Admission of illegal testimony presumptively prejudices the

party against whom it is admitted, and is cause for reversal, unless it is apparent the jury's verdict could not have been influenced by it.   (p. 521).

Error to Circuit Court, McDowell County.

John T. White was convicted of murder in the second degree, and on writ of error to the circuit court the judgment was affirmed, and he brings error.

*Reversed, and remanded.*

*Froe & Capehart, E. C. Marshall, Joseph M. Crockett,* and *Sanders & Crockett,* for plaintiff in error.

*E. T. England,* Attorney General, and *Charles Ritchie,* Assistant Attorney General, for the State.

WILLIAMS, JUDGE:

John T. White was tried at the April term, 1917, of the criminal court of McDowell county for the murder of one Charles Fitzgerald, convicted of murder in the second degree and sentenced to five years imprisonment in the penitentiary.   On writ of error to the circuit court the judgment was affirmed, and he has brought the case here for review.

Defendant kept a restaurant in the town of Anawalt in McDowell county.   About one o'clock P. M. on a Sunday in February, 1917, deceased went into defendant's restaurant, ordered a bottle of ginger ale and while he was being waited on by defendant's son, George White, an altercation occurred between them.   Defendant, who was in another part of the room several feet away, hearing the altercation, came to his son and asked him what the trouble was, and when his son started to tell him he stopped him and said:"Let me see what this man (meaning deceased) has got to say."   Deceased replied, "This boy of yours needs a good beating." Defendant also says deceased swore, and he told him not to use such language in his house and to get out, and immediately got over the counter with his pistol in his hand.   At that moment two or three bystanders took hold of deceased and led him out of the restaurant.   A number of persons, estimated by some of the witnesses to be twenty or thirty,

were in the restaurant at the time. Some of them who were examined as witnesses say defendant struck deceased before he was taken out. A short time after he had been put out, variously stated by the witnesses as five, ten and twenty minutes, deceased came back into the restaurant and went to the same place at the counter where he had been before, and there is testimony that he remarked as he was being taken out, "Wait until I come back." Defendant himself swears he said, "He would be back in a minute, and cursed." He went up to the counter where he had previously gotten the ginger ale and, defendant swears, one of the clerks asked him if he wanted anything, and he replied, "Not a God damn thing". Defendant, who heard the remark, then left his desk, with his pistol in his hand, and went to where deceased was standing and said to him, "I guess you have got your pistol, and have come back to kill me," and told him to take his hands out of his pockets and let him have his pistol, and that deceased started as though he was going to pull his hand out of his pocket and defendant shot him because, as he swears, he thought deceased was going to kill him. Deceased was not armed with a pistol or any other deadly weapon. A few minutes after he was killed his pockets were searched, and no weapon was found upon his body.

The giving of the State's instructions Nos. 1, 2 and 3, and the refusal to give on behalf of defendant his instructions Nos. 10, 11, 13, 14 and 16, are assigned as errors. No. 1 is as follows:

"The Court instructs the jury that where a homicide is proved, the presumption is that it is murder in the second degree, and the burden is on the State to show that it is murder in the first degree; and upon the accused to show that it was without malice, and is, therefore only manslaughter, or that he acted lawfully and is therefore not guilty, and in arriving at a verdict in this case, as to the degree of guilt, if any, the jury should take into consideration all the evidence, both that for the State and defense." The objection urged against this instruction is that it does not contain a complete statement of the law by which the jury were to be governed in arriving at their verdict in the

light of defendant's evidence, and because it does not inform the jury that the presumption of murder in the second degree may be rebutted by proof of extenuating circumstances, and further because it does not inform the jury that any verdict reached by them must be founded upon evidence that would satisfy their minds beyond reasonable doubt. The homicide occurred under circumstances, admitted by defendant, which prove that he was either guilty of murder in the first or second degree, or else was not guilty of any crime, and should have been acquitted. Ten or fifteen minutes had passed after deceased had been put out of the restaurant before he returned, and there is no evidence that, on his return, he said anything to anyone or that he attempted to commit any act of violence. His only offense was his impolite and profane reply to a question by one of the clerks to know what he wanted. Hearing his remark, defendant approached him from another part of the room and accused him of having a pistol in his pocket, and ordered him to take his hands out of his pockets, and when he attempted to withdraw his hand from his pocket defendant shot and killed him, without waiting to see whether he was armed or not. He did not even order him to go out. Whether an unlawful homicide is murder or manslaughter depends upon the intent. If the act is done in sudden heat of passion, upon sufficient provocation, out of tenderness to the frailty of human nature the law then reduces the homicide from the crime of murder to manslaughter. But the provocation for the killing must be a reasonable one. Where the homicide is committed with a deadly weapon mere words, however insulting or contemptuous, are not sufficient. *Read.* v. *Commonwealth,* 22 Grat. 924; *State* v. *Crawford,* 66 W. Va. 114; 21 Cyc. 743; 13 R. C. L., Sec. 99; 21 A. & E. E. L. 179; 1 Wharton's Crim. Law 615; and Wharton on Homicide 274. Defendant and deceased were not engaged in combat, and there is no evidence that deceased attempted to strike defendant or do any violence to him, or that he even made any remark to him. Hence there was no provocation for hot blood which could warrant a finding of manslaughter. He was either guilty of murder in the first or second degree or entitled to be acquitted on the

ground of self-defense.    He had a right to order deceased
out of his building and, on his refusal to go, to have used
such force as was necessary to evict him, but he did not
order him out or try to put him out.    *State* v. *Flannagan,*
76 W. Va. 783.    But when deceased entered the room he ap-
proached him immediately with his pistol in his hand, and
accused deceased of having a pistol in his pocket, and be-
fore ascertaining whether he had or not, shot him dead.    The
instruction submitted to the jury the question of defendant's
innocence, or his guilt respecting the only degree of homicide
of which he could have been found guilty upon the evidence.
It was not a binding instruction and, therefore, was not re-
quired to cover all questions of law bearing on the case.    It
did tell the jury to consider all the evidence in the case, both
that offered by the State and by the defendant.    Defendant's
instructions Nos. 6 and 9, which were given, informed them
respecting their duty, if they entertained any reasonable doubt
concerning the proof of any material fact.

Objection to the State's instructions Nos. 2 and 3 is not
argued in brief, and we infer that assignment has been aban-
doned.    Those instructions were clearly proper.

Instructions Nos. 10 and 11, offered by accused, were pro-
perly refused for the reason the questions presented by them
were fully covered by his No. 4, which was given.    No. 13 was
properly refused because the evidence did not warrant it.
There is no evidence that defendant was attacked, or was
about to be attacked, in his own house by deceased.    The
law respecting defendant's right of self-defense, and his right
to act upon reasonably apparent danger, and also concerning
his right to eject deceased from his restaurant was correctly
given to the jury by defendant's instructions Nos. 4 and 7,
and, therefore, his Nos. 14 and 16 on the same subject were
properly refused.

Defendant testified in his own behalf, and on cross-exam-
ination the court permitted counsel for the state to ask and
required him to answer, over his objection, if he had not been
convicted, at the previous term of court, of selling intoxicat-
ing liquors in violation of the law.    His answer was that he
had been.    He then excepted, and again, at the conclusion of

the trial, moved the court to strike out that testimony; the court again overruled his motion and he again excepted. That testimony was not proper for any purpose, not for the purpose of proving the character of the accused as a peaceable and orderly man, for his character in that respect was not an issue. He had not put it in issue himself, and, until he did so, the state could not attack it. *State* v. *Miller,* 75 W. Va. 591, and *State* v. *Sheppard,* 49 W. Va. 582. Nor was it admissible as affecting defendant's credibility. The rule respecting the right to impeach a witness by proving that his moral character generally is bad, is not uniform in the different jurisdictions, but the more general rule, and the one which has been followed in this state is, that impeaching evidence must be confined to reputation for truth, and does not embrace moral character in general. Evidence of the commission of other crimes is not admissible as impeaching testimony. *State* v. *Grove,* 61 W. Va. 698; *Uhl* v. *Commonwealth,* 6 Grat. 706; *State* v. *Miller,* 75 W. Va. 501; *State* v. *Sheppard,* 49 W. Va. 582; *State* v. *Hill,* 52 W. Va. 296; 40 Cyc. 2595; 4 Chamberlayne's Modern Law of Evidence, Sec. 3276; 1 Jones on Evidence, Sec. 143; 5 *Id.,* Sec. 861.

Where a party testifies in his own behalf, the same rules, respecting admissibility of testimony, govern his cross-examination as are applicable in the case of any other witness. 5 Jones on Evidence, Sec. 836. Not being admissible for any purpose, the testimony may have prejudiced defendant by tending to degrade him in the estimation of the jury, and it is not clear to us that he was not materially prejudiced by it. The rule of law is, when the court can not clearly see that a party was not prejudiced by the admission of immaterial evidence, it will be presumed he was thereby prejudiced. *Ewers* v. *Montgomery,* 68 W. Va. 453; *Foundry Co.* v. *Steel and Iron Co.,* 62 W. Va. 288, and cases cited at page 295 of the opinion. For this error the judgment will be reversed and the case remanded for a new trial.

*Reversed and remanded.*