# CHARLESTON.

## STATE v. ALVA STONE.

(No. 5364.)

Submitted October 13, 1925.   Decided October 20, 1925.

1. INDICTMENT AND INFORMATION—*Indictment for Keeping and Storing Wine for Sale, in Form Prescribed by Statute, Held Valid.*

   An indictment in the form prescribed by Sec. 3 of chap. 32a of the Code is valid. *State* v. *Hurley,* 78 W. Va. 638. (p. 152.)

   (Indictment and Information, 31 C. J. § 171.)

2. CRIMINAL LAW—*Witness With Long Experience With Alcoholic Liquors Held Competent to Express Opinion as to Intoxicating Quality Solely From Odor of Liquor.*

   A witness who has had long experience with alcoholic liquors is competent to express an opinion as to the intoxicating potentiality of a liquor based solely on its odor. (p. 152.)

   (Intoxicating Liquors, 33 C. J. § 528.)

3. SAME—*Admission of Incompetent Evidence on Material Issue is Cause for Reversal Unless Not Prejudicial.*

   The admission of incompetent evidence on a material issue, is cause for reversal unless it is apparent that the objector was not prejudiced thereby.   (p. 153.)

   (Criminal Law, 17 C. J. § 3662.)

   (NOTE:   Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

Error to Circuit Court, Preston County.

Alva Stone was convicted of keeping and storing wine for sale, and he brings error.

*Judgment reversed; new trial awarded.*

*Wm. T. George,* for plaintiff in error.

*Howard B. Lee,* Attorney General and *R. A. Blessing,* Assistant Attorney General, for the State.

HATCHER, JUDGE:

Upon an indictment charging the keeping and storing of wine for sale, the defendant was found guilty, and was fined $100.00 and sentenced to ninety days in jail by the circuit court of Preston County.

The evidence for the State is that armed with a search warrant (the validity of which is not questioned) Prohibition Officer D. W. Brown, Constable E. T. LaRue and posse found in and around the house of the defendant several bottles and jugs that had contained wine and a twenty-gallon and a ten gallon jar, both practically full of berry juice that was "sour and working." In a drain on the "far side" of defendant's meadow, covered with weeds and hay, the officers found several kegs containing in all about forty gallons of wine. The drain was in "plain view" of the house. The officers took samples of the wine, which were delivered by Constable La-Rue to Sheriff Copeman. The sheriff sent one of these samples to Samuel Morris, Professor of Chemistry at the West Virginia University, by B. W. Arnold, a deputy sheriff. Arnold did not appear as a witness. Prof. Morris testified that he analyzed the sample delivered to him and that it contained $10\frac{1}{2}$ per cent alcohol. After giving evidence as to the raid, Brown stated that he had been a prohibition officer five years, in which time he had seized and examined hundreds of gallons of intoxicating liquors; that he observed the odor of this wine and from that odor it was his opinion that the wine was intoxicating. LaRue gave like testimony, and also said that he had drunk wine, which had an odor like the wine in question, and had found it to be intoxicating.

The evidence of the defendant is that the wine found on his farm was not his wine, and that he knew nothing about it. He was supported in this by his wife. She further testified that she had prepared the berry juice found in the jars at the house with the intention of making jelly, but that she had failed to do so for lack of time and sugar. She said "We always make lots of jelly."

The defendant charges the circuit court with error in overruling the motion to quash the indictment, in refusing to strike

out the evidence that the wine.was intoxicating, and in refusing to set aside the verdict of the jury and grant a new trial.

The indictment is in the form prescribed by Sec. 3 of Ch. 32 A of the Code. This form has been approved in *State* v. *Miller* 89 W. Va. 84, and *State* v. *Hurley* 78 W. Va. 638. *Stare decisis* will not now permit a doubt as to the validity of the indictment.

The defendant contends that the court erred in not excluding the evidence of Prof. Morris, for the reason that the State failed to show that the wine delivered by Arnold to Morris was the same wine received by Arnold from the sheriff. This contention is well taken. Without the evidence of Arnold the State was in no position to say to the jury that the wine analyzed by Prof. Morris was the wine found on defendant's farm. The court erred in permitting this evidence to go to the jury.

The sufficiency of the evidence of Brown and LaRue to prove that the wine was intoxicating is seriously controverted by the defendant on the ground that the opinion of each was based solely on the *odor* of the wine. We are not impressed with this contention. Brown and LaRue had handled hundreds of gallons of intoxicants. Alcoholic liquors may vary greatly both in flavor and aroma, but the characteristic tang of the alcohol is unmistakable, and may be as definitely perceived by the sense of smell as by the sense of taste. The stronger the alcoholic content, the more powerful the odor as well as the flavor. If a liquid has the pungent aroma associated with intoxicating drinks, a witness acquainted therewith is competent to testify as to its intoxicating potentialities solely from its odor. In *State* v. *Dennison,* 85 W. Va. 261, it was held that the intoxicating quality of the liquor could be established by proof of a *general nature* as well as by a chemical analysis. In *State* v. *Snodgrass,* 91 W. Va. 553, the sheriff testified that he saw the defendant crash a package of bottles and that from the odor emanating from the bottles he would swear that they had contained whiskey. A conviction based on that testimony was affirmed, this court holding that ''The testimony of a witness is not limited to the facts observed by him through any one of the senses. Information communi-

cated through any of his senses is proper matter of evidence, if otherwise pertinent.'' Brown and LaRue were competent to testify on this matter because of their long experience, and their evidence was therefore proper.

It is obvious that the thirty gallons of berry juice found at the house would make a quantity of jelly inordinate for the requirements of a family, even though they used ''lots of jelly.'' It is common information that jelly is not made from sour and working berry juice. It is equally well known that wine is the finished product of a fermenting juice. For the sake of argument admit, as the defendant contends, that the bare fact of finding wine on a man's premises should not be sufficient to overcome the presumption of innocence to which he is entitled. In this case, however, the finding of the wine in the defendant's meadow does not stand alone. It is simply the *présent* phase of a complete cycle in the manufacture of wine. For proof of defendant's *past* connection therewith, is the mute testimony of the jugs and bottles found at the house, empty now but still ordorous of wine. For proof of his *future* intention there is the large quantity of fermenting berry juice at the house—wine in the making. These three points of evidence when correlated are sufficient to support the, finding of the jury, that the wine in question was stored by the defendant.

It is well settled law that the admission of incompetent evidence presumptively prejudices the party against whom it is admitted, and is cause for reversal, unless the court can see that the jury was not influenced thereby. *State* v. *White*, 81 W. Va. 516.; *Foundry Co.* v. *Steel and Iron Co.*, 62 W. Va. 288; *Dent* v. *Pickens*, 34 W. Va. 240; *Santillan* v. *Moses*, 1 Cal. 92; *Ellingwood* v. *Bragg*, 52 N. H. 488; *Anthoine* v. *Coit*, 2 N. Y. 51.

Had the evidence of the chemist been stricken out, and a verdict of guilty returned on the remaining evidence we would not disturb it. In such case the finding of the jury would have shown that it considered the opinions of Brown and LaRue sufficient to establish beyond doubt that the wine was intoxicating. We cannot say, however, what the jury would have found without the evidence of Prof. Morris on this point.

It is quite likely that the jury did not even consider the opinions of the officers, because of the certain and positive proof afforded by the chemical analysis of the wine. Instead of the record demonstrating that the incompetent evidence did not sway the jury, we are forced to believe that it influenced materially if not entirely their conclusion that the wine was intoxicating.

This case will therefore be reversed and a new trial awarded.

*Judgment reversed; new trial awarded.*