STATE OF WEST VIRGINIA

*v.*

CHARLES W. CRAIG

(No. 10016)

Submitted September 14, 1948. Decided November 16, 1948.

KENNA, JUDGE, dissenting.

*Ezra E. Hamstead* and *Milford L. Gibson*, for plaintiff in error.

*Ira J. Partlow*, Attorney General, and *W. C. Marland*, Assistant Attorney General, for defendant in error.

HAYMOND, JUDGE:

Upon an indictment, returned by a grand jury at the regular June Term, 1947, of the Circuit Court of Preston County, which charged that the defendant, Charles W. Craig, "on the 15th day of February, 1947, in said County of Preston, feloniously and unlawfully did kill and slay one Eli White.", the defendant was tried and convicted of the offense of involuntary manslaughter and sentenced to confinement in jail for a period of one year. To the judgment imposing that sentence the defendant prosecutes this writ of error.

The contention of the State is that the defendant, while operating his automobile in an unlawful manner, caused it to strike White and inflict injuries which resulted in his death eight days later on February 23, 1947.

Except certain testimony which was admitted by the trial court over objection and exception of the defendant upon the question whether he refused to render reasonable and necessary assistance to White following the injury, the evidence is not conflicting.

The decedent, Eli White, at the time he was struck and injured by a two passenger 1938 model Buick coupe automobile owned and driven by the defendant about 6:45 o'clock in the evening of February 15, 1947, was an employee of the State Road Commission and was engaged with two other employees in placing cinders, from a ton and a half dump truck, upon a public highway on Briery Mountain between Kingwood and Terra Alta in Preston County. It appears that the road on Briery Mountain, from a point on a comparatively level stretch, continues on an ascending grade for some distance east of the crest of Caddell Hill.

Sometime prior to the accident in which White was injured he and two other employees of the commission using the truck had loaded it with cinders at the foot of Caddell Hill and had proceeded about one mile to the east and up the grade to a place beyond an elevation in the road and on a flat section of the highway which was slightly lower than the top of the elevation. At that location the road was straight for a distance of about three hundred feet. There they parked the truck on the right side of the road for the purpose of putting cinders on the hard surface which was slippery because of the presence of sleet and ice. As so parked the truck was headed in an easterly direction and its right front and rear wheels were about eighteen inches off the edge of the hard surface of the highway on that side. The traveled portion of the road was from fifteen to eighteen feet in width and the over-all width of the truck, from side to side, was approximately eight feet. On the front part of the body of the

truck, which was raised in a manner that lowered the rear end to cause the cinders to move in that direction, was a thirty two candle power stationary electric light. The light was burning at the time and it cast its rays at a downward angle of forty five degrees upon the back end of the truck and the road beyond to render visible the section on which the cinders were to be placed through a device to spread them attached to the lowered end of the truck.

For some time before the accident, and when it occurred, the view of the road in the vicinity of the truck was rendered difficult by the presence of fog. The two employees with White, however, stated that they could see to the rear of the truck for a distance of about one hundred and fifty feet.

When the truck had been placed and the preparations to spread the cinders had been made, one of the two employees, the driver, was in the cab at the front of the truck, the other was on the body, and White was standing on the hard surface of the road at the rear of the truck. Within one or two minutes afterward the automobile of the defendant, having passed over the elevation in the road, collided with the truck. At the time, the defendant, accompanied by his wife, was driving his automobile in the direction in which the truck was headed. Neither of the men on the truck saw the automobile until it struck White and they first learned of its presence when they heard it hit him. The front end of the automobile ran or slid into the rear end of the truck, struck White and pinned him between the automobile and the truck. The automobile had been traveling at a speed of from twenty to twenty five miles per hour but when the collision occurred the automobile had been brought almost to a stop by the driver. The impact did not jar or damage the truck. It did not knock White to the ground but caused him, while facing the truck, to fall or bend backward over the front bumper of the automobile, the grill of which was mashed or dented by the collision. The defendant immediately backed his automobile from the rear of the truck and released White from his position between

it and the truck. After he was hit White stood in the road behind the truck until he was led or assisted in walking from that point along the right side of the truck by the two employees and the defendant's wife, all of whom went at once to his assistance. As soon as the defendant disengaged his automobile and backed it for a distance of eight or ten feet from the truck he went to White who was then helped into the cab by the two employees. While standing at the rear of the truck, after the collision, White was unable to walk without assistance and, though he did not appear to be seriously injured, he complained of severe pain in his hips.

The defendant had left Kingwood for Terra Alta about 6:15 o'clock that evening. When he started on his trip, the weather was good and the road was dry. After he had proceeded about half way up Caddell Hill fog appeared and the visibility became worse as he continued toward Terra Alta. Near the top of the hill the road became icy.

His version of the manner in which the collision occurred, as it appears from his testimony which is corroborated by that of his wife as to his conduct, is that in approaching the truck and in passing over the elevation in the road behind it, he was operating his automobile in second gear and when he was about forty to fifty feet from the truck he first saw a single light but he did not then know the source of the light. He slackened the speed of his automobile and tried to bring it to a stop by using the brakes and releasing the clutch but was unable to do so because of the slippery condition of the road. The light obscured his vision and he could not then see the truck. When he was from fifteen to twenty feet from the point of the collision he saw White standing in the road behind the truck and in front of the approaching automobile. White did not move but stood and looked at the defendant. The automobile did not stop but kept moving and slid into the truck.

The defendant produced, as a witness in his behalf, the driver of an automobile which was following him at a

distance of about fifty feet at the time of the collision. This witness testified to substantially the same facts as those testified to by the defendant as to the fog, the visibility and the slippery condition of the road at the time of the accident, and the speed at which the defendant was driving his automobile as he approached the top of Caddell Hill. This witness watched the light on the defendant's automobile to assist him in the fog. When he saw the single light on the truck he thought it was the light of a new filling station. Then he saw the defendant's automobile suddenly collide with the truck. He turned his car to the left and passed the truck and, at that time, he observed that the light he had seen was a search light on the truck. He did not stop because he thought no damage had been done. He heard no noise of the collision, and the manner in which the automobile ran into the rear of the truck led him to believe that nothing serious had occurred.

The evidence further discloses that two or three minutes after the collision the defendant, accompanied by his wife, left the scene and proceeded to Terra Alta where he reported the accident to the county road supervisor. The two men in the truck, with White in the cab, started for the hospital at Hopemont, a short distance east of Terra Alta, soon after the defendant had departed. White was admitted to the hospital and given medical attention. The next day he was taken to the Monongalia General Hospital in Morgantown and placed in the care of a competent orthopedic surgeon who treated him for his injury. When he entered that institution he did not appear to be seriously injured. There were bruises on his right hip and he was found to be anemic. X-ray photographs were taken which showed a slight fracture of the pelvis on the right side of his body with no displacement. He was put to bed and given proper treatment for a fracture of that type. About three days after he arrived at the hospital in Morgantown paralysis of the bowel developed. About forty eight hours before his death he contracted pneumonia and he died in the hospital on February 23, 1947.

The only medical testimony in the case is that of the doctor who treated White while he was a patient in the hospital in Morgantown. When asked to state the direct cause of White's death the doctor replied that he thought the actual cause of death was pneumonia. He also testified that he thought paralysis of the bowel was probably the direct result of the injury. Upon his examination in chief, after stating the injuries sustained by White, which have already been described, the doctor was asked this question: "Did he ever recover from those injuries?" His answer was: "No. He became very much worse, with partial paralysis of the bowel. I forgot to say that when he was admitted he was found to be anemic, and we got some friends from up here and he had several blood transfusions in the next few days, and then he developed pneumonia, and that, with his trouble with his bowel, he died on the 23rd day of February." On re-direct examination he was asked this question: "What would you say were the contributory factors to his getting pneumonia at that time?" His reply was: "I think first of all, he was very anemic; he had paralysis of the bowel, which came on about the third day afterward, which made pressure, and this in turn was followed by congestion in the lungs." On cross-examination, in answer to this question: "If he had not contracted pneumonia, then any injury in your opinion and judgment would not cause his death.", he said: "No, I think you could reasonably expect him to recover from his injuries."

Over objection and exception of the defendant, the trial court permitted the two men on the truck at the time of the collision to testify that the defendant, after the collision and during the two or three minutes he remained on the scene, refused to render any assistance to White in his injured condition and to take him in the automobile to the hospital near Terra Alta. Both the defendant and his wife, in their testimony, denied that charge and stated that she assisted White from the road and that the defendant offered to take him to a doctor or a hospital in the defendant's automobile but that, as its single seat was smaller than the seat in the cab of the truck and as a

lever used to shift gears was located near the middle of the seat, one of the men at the truck informed them that there was more room in the truck and that they would take White in it.

The defendant seeks in this Court a reversal of the judgment on these grounds: (1) The admission of evidence that the defendant, after the collision in which White was injured, refused to give him assistance, was error; (2) the evidence is not sufficient to show that the death of White resulted from any unlawful act of the defendant or a lawful act performed by him in an unlawful manner; (3) the injuries sustained by White did not cause his death; and (4) the erroneous action of the trial court in giving two instructions requested by the State and in refusing to give two instructions requested by the defendant.

These contentions will be considered and determined in the order in which they have been stated.

A statute of this State provides that in case of an accident the operator of a vehicle, and the owner when present, shall stop immediately and, upon request, give his name, his address and the number of his operator's license, and render such assistance as may be reasonable or necessary; that in all cases of accident resulting in injury to any person, the operator shall immediately report the details to the State Road Commission; and that any person violating any of those provisions shall be deemed guilty of a misdemeanor and, upon conviction, fined not less than twenty five dollars nor more than one hundred dollars. The statute further provides that any person convicted of failing to stop and render assistance to any person who is seriously injured shall be fined not less than one hundred dollars nor more than one thousand dollars, or imprisoned not less than thirty days nor more than one year. Code, 1931, 17-8-23.

This statute creates a separate and distinct offense from that for which the defendant was indicted, tried and convicted. This Court has held that, as a general rule,

which is subject to exceptions, upon the trial of a person indicted for a specific offense evidence of a distinct and unconnected criminal act, other than the act charged in the indictment, is inadmissible. *State* v. *Light,* 127 W. Va. 169, 31 S. E. 2d 841. The evidence here in question does not come within any exception to the general rule just stated. In the early case of *Watts* v. *The State,* 5 W. Va. 532, Point 1 of the syllabus is in these words: "Evidence of a distinct, substantive offense cannot be admitted in support of another offense." In *State* v. *Coleman,* 96 W. Va. 544, 123 S. E. 580, the opinion contains this language: "The general rule is that on a prosecution for a particular crime evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is illegal and inadmissible."

The challenged evidence of the failure of the defendant to render assistance to the person injured in the collision is wholly unconnected with the charge in the indictment that the defendant feloniously and unlawfully caused his death. The failure of the defendant to render assistance did not result in any additional exposure of, or injury or discomfort to, his victim for any appreciable period of time. The undisputed testimony on that point indicates that the men in the truck started with White for the hospital almost immediately and, at most, within a few minutes after the defendant left the scene of the accident. Nothing that he did or failed to do, after the collision, aggravated the injury or contributed in any way to the death which occurred eight days later.

The evidence was inadmissible for another reason. The Constitution of this State provides that in all criminal trials the accused shall be fully and plainly informed of the character and the cause of the accusation. Constitution of West Virginia, Article III, Section 14. No charge or accusation that the defendant violated the statute which required him to render assistance after the injury was, or properly could have been, contained in the in-

dictment which charged the defendant with the distinct offense of feloniously and unlawfully killing and slaying White.

The obvious purpose of the State in introducing the evidence in question at the trial in the circuit court was to establish, in that way, an act of the defendant unlawful in character, because of his violation of the statute, which caused White's death. This theory, however, was not urged or relied upon by the State in the argument of the case in this Court. The natural and clear effect of the evidence of the refusal of the defendant to render the assistance required by the statute which, as already indicated, in no way caused or contributed to the death of the deceased, was to create a feeling of hostility toward the defendant in the minds of the jurors and to influence them in returning a verdict of guilty. The evidence was prejudicial and its admission by the trial court constituted reversible error. *State* v. *Light,* 127 W. Va. 169, 31 S. E. 2d 841; *State* v. *Dorton,* 125 W. Va. 381, 24 S. E. 2d 455; *Nicholas* v. *Granite State Fire Insurance Company,* 125 W. Va. 349, 24 S. E. 2d 280; *Mitchell* v. *Metropolitan Life Insurance Company,* 124 W. Va. 20, 18 S. E. 2d 803; *State* v. *Stone,* 100 W. Va. 150, 130 S. E. 124; *State* v. *White,* 81 W. Va. 516, 94 S. E. 972.

In considering the second ground for reversal assigned by the defendant it should be said that the crime of involuntary manslaughter occurs when an unintentional homicide committed by a person results from his unlawful act, or his lawful act performed in an unlawful manner, and that a person's mere negligence which causes the unintentional death of another person does not constitute that offense. *State* v. *Lawson,* 128 W. Va. 136, 36 S. E. 2d 26. The correctness of this proposition is conceded by the State, but it contends in this Court, to sustain the conviction, that the manner in which the defendant operated his automobile, in colliding with the truck and injuring White, was not mere negligence upon the part of the defendant, but was a violation by him of the provisions of Section 18, Article 8, Chapter 17 of the Code of

West Virginia, 1931. Those provisions, to the extent here pertinent, are that no person shall drive a vehicle upon a highway at a greater speed than is reasonable and prudent, with due regard to the traffic, the surface and the width of the highway, the hazard at intersections, and any other then existing conditions, and that no person shall drive at a greater speed than will permit the driver to exercise proper control of a vehicle and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance upon or entering a highway in compliance with legal requirements and with the duty of drivers and other persons using the highway to exercise due care.

Though the evidence introduced by the State indicated visibility from the truck in the direction from which the automobile of the defendant approached it for approximately one hundred and fifty. feet at the time of the collision, there is no showing that the truck was visible for that distance to anyone approaching it in the direction in which the defendant was traveling. The two men on the truck testified that they could see the road in the rear for a distance of about one hundred and fifty feet. That was the direction in which the rays from the light were cast and neither of them saw the automobile until they heard it strike White at the time of the collision. The defendant and his wife did not see the light until they were approximately fifty feet from the truck. Neither of them could determine the source of the light or distinguish the truck at that distance from it. Both were temporarily blinded by the light when they first saw it, and neither saw White until the automobile in which they were riding was from fifteen to twenty feet from him. The defendant was driving his automobile in second gear at a speed of twenty to twenty five miles per hour when he first saw the light. He then applied the brakes, released the clutch, and reduced the speed until he had almost stopped his automobile at the time it struck White while he was standing on the road at the rear of the truck. The driver of the automobile which was following the defendant at a distance of about fifty feet be-

hind him was also unable to ascertain the source of the light or to observe the truck until he passed it without stopping in turning to his left. The defendant and his wife say that the speed of the automobile in which they were riding was twenty five miles per hour at the time they discovered the light and that they first encountered the slippery condition of the road while they were ascending Caddell Hill. The driver of the other motor vehicle testifies to the same effect concerning the speed of his automobile and the approximate location at which it began to slip on the road. None of this testimony is controverted by any evidence in the case. Though the defendant was unable to stop the automobile before it struck White, his inability to do so was not due to failure on his part to control it within the meaning of the statute. Neither was the speed of the automobile greater than was reasonable or prudent in view of the slippery condition of the road with which he was first confronted only a few minutes before the collision at a distance of less than one mile from the place at which it occurred. When regarded in its most unfavorable light, the conduct of the defendant in the operation of his automobile can not be held to constitute anything more culpable than negligence. In acting as he did, he did not violate any provision of the statute or commit an unlawful act or a lawful act in an unlawful manner.

In support of his third ground for reversal the defendant contends that the evidence is not sufficient to prove beyond a reasonable doubt that the injuries sustained by White in the collision were the cause of his death. The testimony of the doctor who treated him is that, in his opinion, the actual cause of death was pneumonia which developed about forty eight hours before White died eight days after he was injured. This is the only definite and positive statement in the evidence which deals with that phase of the case. Though the doctor stated that paralysis of the bowel, which appeared about three days after the injury, was the probable result of the injury, he did not express any explicit or unqualified opinion that it was, in fact, a result of the injury. There is nothing in the

evidence to indicate that, even if the injury caused the paralysis, the pneumonia was produced either by the paralysis or by the injury. On that vital point there is only speculation and conjecture. The doctor does not express an opinion as to the cause of the pneumonia which he stated was the actual cause of death. From the evidence it is as likely that the pneumonia resulted from the anemia with which the patient was afflicted, or from any other natural cause, as that it resulted from the injury. In fact, the testimony of the doctor tends to indicate that the injury did not cause the death of his patient for he stated that the injury, consisting of a slight or simple fracture of the pelvis on the right side of his body, was the type of injury from which it could reasonably be expected that the patient would recover. Otherwise stated, the injury was such as ordinarily does not result in the death of an injured person.

The uncertain character of the proof on that vital element of the offense charged in the indictment clearly fails to satisfy the universally recognized requirement of the law that, in a criminal case, the guilt of the defendant must be established by competent evidence beyond a reasonable doubt. *State* v. *Gilfillen*, 96 W. Va. 660, 123 S. E. 578; *State* v. *Roush*, 95 W. Va. 132, 120 S. E. 304. An essential element or ingredient of the crime of involuntary manslaughter is that the unintentional death of the victim was caused by the accused. Unless the proof is sufficient to establish, beyond a reasonable doubt, that the act of an accused caused the death of another person, a verdict which convicts him of the crime of manslaughter can not stand. In felonious homicide the corpus delicti consists of the two essential elements of death and the existence of the criminal agency which caused it. *State* v. *Koontz*, 117 W. Va. 35, 183 S. E. 680; *State* v. *Beale*, 104 W. Va. 617, 141 S. E. 7. This principle applies to the crime of involuntary manslaughter, *Terry* v. *Commonwealth*, 171 Va. 505, 198 S. E. 911, which by force of the statute in this jurisdiction is a misdemeanor. Code, 1931, 61-2-5; *State* v. *Smith*, 119 W. Va. 347, 193 S. E. 573.

Upon the question of the cause of the death of White, the decedent, the facts in the case of *Terry* v. *Commonwealth*, 171 Va. 505, 198 S. E. 911, closely resemble the facts in this case. In the *Terry* case, in which a judgment of involuntary manslaughter was reversed, the defendant, while intoxicated, drove his automobile into the rear of another vehicle and forced it across an intersection where it struck William Fox, a pedestrian, breaking his leg and rendering him temporarily unconscious. The injured person was promptly hospitalized and examined by a physician who set the broken leg. He was injured about noon on Sunday. He ate well and appeared to be resting comfortably until about ten thirty o'clock Monday night, at which time he was found to be suffering from acute pulmonary edema of the lungs, and as a result of the disease he died early Tuesday morning. The medical testimony, which was limited to the evidence given by the attending physician, who stated that death was the result of the disease and that the origin of the disease was unknown, indicated that it was equally probable that death was the result of natural causes as it was of the injuries received in the accident. The opinion of the Court contains these statements which are peculiarly applicable here:

"In every prosecution for the commission of a homicide, the corpus delicti has two components; death as the result, and the criminal agency of another as the means. * * *.

"In Brown v. Commonwealth, 89 Va. 379, 16 S. E. 250, it is said that there can be no conviction where the corpus delicti is not proved with particular clearness and certainty.

"In the case at bar the evidence was sufficient to convict the accused of driving the car while under the influence of liquor, or to convict him of violating the statute regulating traffic upon the highways, but he was prosecuted for neither of these crimes. The indictment charged him with manslaughter. The burden was upon the Com-

monwealth to prove that the unlawful act of the accused was the efficient cause of the death of William Fox."

The fourth and final assignment of error relates to instructions given and instructions refused. The trial court gave, at the instance of the State, two instructions designated as State's Instruction No. 2 and State's Instruction No. 5. The first of these instructions is challenged as incorrect in the brief filed in behalf of the defendant. An examination of the record, however, shows that the instruction was given without objection and that it contains a correct statement of law. For these reasons, the action of the court in giving the instruction was not error. The second of these instructions was given over general objection and exception by the defendant. It told the jury, in effect, that involuntary manslaughter is committed when one person, while engaged in an unlawful act, unintentionally causes the death of another person, or when engaged in an *unlawful* act, causes the death of another person by gross negligence; and that it is a misdemeanor, punishable by a fine or by imprisonment in the county jail not to exceed one year, or by both fine and imprisonment, in the discretion of the court. The portion of the instruction of which the defendant specifically complains is the statement: "or when engaged in an *unlawful* act, causes the death of another person by gross negligence." (Emphasis added.) Counsel for the defendant asserted upon the oral argument of the case that the word "unlawful" in the passage quoted, which appears in the instruction as shown by the record as printed, is a misprint for the word "lawful" contained in the transcript of the record. Examination of the transcript as certified discloses that counsel are mistaken on this point. The instruction is identical in form in the transcript and as printed, and in each instance it contains the word "unlawful". The instruction, in the form stated, is ineptly drawn and needlessly repeats, in the portion quoted above, the words "when engaged in an unlawful act", which are immediately followed by the expression: "causes the death of another person by gross negligence" and should not have been given. The repeated phrase

"when engaged in an unlawful act, causes the death of another person" is a correct statement of law and the addition of the words "by gross negligence", is entirely unnecessary. A person who, while engaged in an unlawful act, unintentionally causes the death of another, commits the offense of involuntary manslaughter, and it is unimportant that the unlawful act which causes death is negligently performed. The unlawful, not the negligent, character of the act, is the important and determinative factor in the perpetration of the crime. If, however, the act of a person which causes the unintentional death of another person is lawful, it must be committed in an unlawful as distinguished from a merely negligent manner to constitute the offense. See *State* v. *Lawson,* 128 W. Va. 136, 36 S. E. 2d 26. As already pointed out, however, the evidence wholly fails to show that the conduct of the defendant in causing the injury sustained by White in the collision constituted either an unlawful act or a lawful act committed in an unlawful manner, and, because there was no such evidence upon which to base the instruction, the action of the trial court in giving it was reversible error. *State* v. *Shelton,* 116 W. Va. 75, 178 S. E. 633; *State* v. *Zinn,* 95 W. Va. 148, 120 S. E. 387; *Penix* v. *Grafton,* 86 W. Va. 278, 103 S. E. 106; *State* v. *Donahue,* 79 W. Va. 260, 90 S. E. 834.

The defendant also complains of the refusal of the trial court to give two instructions offered by him designated as Defendant's Instruction No. 5 and Defendant's Instruction No. 10. One of them, Defendant's Instruction No. 5, would have told the jury that the State was required to prove the guilt of the defendant beyond all reasonable doubt and that mere suspicions or suspicious circumstances would not sustain a conviction. The trial court refused to give it because it contained the statement that mere suspicions or suspicious circumstances would not sustain a conviction. The evidence discloses no facts which tend to establish any mere suspicion of the defendant's guilt and it does not indicate the existence of any condition which gives rise to any suspicious circumstances. That part of the instruction does not apply to the

evidence in this case and, for that reason, the instruction was properly refused. It is not error to refuse an inapplicable instruction. *State v. Garten,* 131 W. Va. 641, 49 S. E. 2d 561, decided at this term of court; *State v. Lane,* 116 W. Va. 636, 182 S. E. 784; *State v. Shelton,* 116 W. Va. 75, 178 S. E. 633; *State v. Hayes,* 109 W. Va. 296, 153 S. E. 496; *State v. Barker,* 92 W. Va. 583, 115 S. E. 421; *Bradshaw v. Commonwealth,* 174 Va. 391, 4 S. E. 2d 752. The other instruction which was refused, Defendant's Instruction No. 10, would have directed the jury to acquit the defendant if the jury believed from the evidence that the death of the decedent was due "to what is commonly known as a road accident". As there are many kinds of road accidents and as the quoted words could readily be applied to an accident of a character entirely different from the collision to which the evidence related, the only effect of the instruction in that form would be to confuse and mislead the jury. An instruction which tends to confuse or mislead the jury should not be given. *Wilson v. City of Elkins,* 86 W. Va. 379, 103 S. E. 118; *Laraway v. Croft Lumber Company,* 75 W. Va. 510, 84 S. E. 333; *Walker v. Strosnider,* 67 W. Va. 39, 67 S. E. 1087, 21 Ann. Cas. 1; *Stewart v. Doak Brothers,* 58 W. Va. 172, 52 S. E. 95; *Nicholas v. Kershner,* 20 W. Va. 251. The instruction also contained an incorrect statement of law for the reason that any accident upon a public highway caused by a person while engaged in an unlawful act or a lawful act performed in an unlawful manner which results in the unintentional death of another person could lead to a valid conviction for the crime of involuntary manslaughter. "An instruction susceptible of an interpretation that would make it variant from the law is properly refused." *Cook v. Coleman,* 90 W. Va. 748, 111 S. E. 750. The action of the court in refusing the instruction was not error.

Because of the errors indicated the judgment is reversed, the verdict is set aside, and a new trial is awarded the defendant.

*Judgment reversed; verdict set aside; new trial awarded.*

KENNA, JUDGE, dissenting:

With every deference to the majority, in my opinion the Court has utterly disregarded the primary rule controlling matters of fact considered by this Court on writ of error after conviction. That rule is where conflicts in the testimony occur, those conflicts and all deductible reasonable inferences are to be resolved in favor, not of the accused or plaintiff in error, but of the State of West Virginia. *State v. Marinitsis*, 130 W. Va. 613, 45 S. E. 2d 733. Furthermore, again in my opinion, the majority has unintentionally misread the printed transcript of the testimony adduced at the trial, only two outstanding examples of which I shall undertake to recount.

In speaking of the death of Eli White a week after he was struck by the accused's automobile and whether that death was to be attributed to his resulting injury or confined to pneumonia alone, which was its immediate cause, the opinion of the Court states: "On that vital point there is only speculation and conjecture." With that statement my understanding of the record before the Court emphatically disagrees. Dr. Justice C. Pickens, a witness for the State, who was the only doctor called, on re-direct examination testified as follows:

"Q. What would you say were the contributing factors to his getting pneumonia at that time?

"A. I think first of all, he was very anemic; he had paralysis of the bowel, which came on about the third day afterward, which made pressure, and this, in turn, was followed by congestion in the lungs.

"Q. I believe paralysis of the bowel was the direct result of injury he received.

"A. I think it probably was. It came on later than you ordinarily see, but I think it probably was.

"Q. So far as you could observe by association with Mr. White, did you have any reason to believe he might have had pneumonia at that time,

or at any time in the near future had it not been for the injury he suffered?

"Counsel for defendant object to the foregoing question, which objection is overruled by the Court, exception saved to defendant.

"A. No, I would not."

To my mind it is perfectly clear that in Dr. Pickens' stated opinion the death of White resulted from pneumonia brought about by his injury and that his death at that time would not otherwise have resulted. At any rate, the question was not left open to "speculation and conjecture."

The opinion of the Court states: "After he was hit White stood in the road behind the truck until he was led or assisted in walking from that point along the right side of the truck by the two employees and the defendant's wife, all of whom went at once to his assistance." The State's witness, T. A. Nethkin, in charge of cindering from the truck, in reply to questions on direct examination, said this:

"Q. Who reached Mr. White first, you or Mr. Johnson?

"A. Mr. Johnson.

"Q. What did you or Mr. Johnson, or both of you do?

"A. Lifted him up so he wouldn't fall in the road."

Ray Johnson, the driver of the State's truck, stated that upon hearing the impact from the cab, he jumped out and reached White in time to keep him from falling. He had this to say:

"Q. Describe the accident in your own words.

"A. I didn't see the car when it come up; I was in the cab. I heard it hit and run back; the car backed away, and this fellow started to fall, and I grabbed him and helped hold him, and Mr. _____ this other man got out of the car and said a few words, and I asked him if they would take him to the doctor or something—"

Concerning Mrs. Craig's conduct at the time the witness Nethkin in his examination in chief had this to say:

"Q. Was there anyone with the driver in the car?

"A. There was a lady; I didn't know her.

"Q. Did she get out of the car?

"A. No."

Conflicts in testimony after conviction are to be resolved in favor of the State. It strikes me as being quite incorrect to state that White stood after he was struck until he was assisted in walking to the cab of the truck by persons including the defendant's wife, all of whom went at once to his assistance. There are a number of other what I consider inaccuracies in the Court's opinion that I shall not undertake to mention such as that although the State's testimony shows that with its work-light on, the workmen at the truck could see the road behind it for a distance of at least one hundred and fifty feet, there was no showing that the truck was visible for an equal distance to a person approaching it in the direction the defendant was traveling, this in spite of the fact that counsel for the accused in his opening statement, made a part of the record, declared that: "This light on the rear of the cinder truck completely blinded defendant."

For these and other reasons I believe the Court has failed to give to a verdict of a jury the dignity to which it is entitled under long settled principles approved by this Court. Without dealing further with questions of fact, in my opinion the controlling principles of law upon which the majority opinion rests are erroneously decided and unnecessarily complicated.

No one questions the fact that Code, 17-8-23, creates a separate and distinct offense. All statutory and common law offenses are separate and distinct. But it is not the separation and distinction in definition that the cases dealing with the principle involved, i. e., the admission of evidence involving circumstances proof of which would

establish an offense different from that for which the accused is being tried, deal. The separation and distinction in the cases we are considering is the consequential separation and distinction of the circumstances involved, all of which boils down to a question of relevance. If irrelevant it is properly excluded: if relevant it should be admitted. It cannot be admitted as an attack upon the accused's character alone.

I, of course, agree that separate, distinct and wholly independent offenses, unrelated to the charge being tried, for which there has been no conviction, cannot be proved nor testified to as against the accused. As an example, rape may not be proved in trying an indictment for receiving stolen goods, knowing them to have been stolen. However, if that principle is to be applied to testimony relevant to the charge which is to be excluded simply because it includes conduct of the accused which amounts to a separate violation of the law, even though directly related to the charge under trial, such as unintentional killing in the commission of a separate felony or death following an abortion, it would greatly hamper law enforcement in this jurisdiction.

I cannot believe that the testimony tending to show the inhuman conduct of the accused within three minutes of the victim's injury in the trial of an indictment for causing death by wanton disregard of the safety of others, should be excluded. The gravamen of the charge is the wanton disregard of the safety of others. To hold that his well-nigh immediate refusal to take the sufferer, who could not stand alone, to a hospital does not go to prove a mental attitude amounting to a wanton disregard of the safety of others is, to my mind, laying down a principle that amounts to cloaking guilt. I, of course, realize that separate and distinct crimes cannot be permitted to be proved. I realize also that in determining what are separate and distinct crimes there frequently is a twilight zone where the trial court's discretion is controlling. For a general discussion, see Jones on Evidence, 2d ed. Volume 2, page 117, *ante* and *et seq.* But, in my opinion, the cir-

cumstances of this case are not within a twilight zone. I believe that the evidence which the majority says the trial court improperly admitted was direct proof of one of the essential elements of involuntary manslaughter. The attitude of the accused was not a distinct offense. Nor was it a subsequent act. The death of White did not occur until a week later. The conduct of Craig or any statement that he made, now under consideration, intervened between the injury and the death of White. The admission of the testimony in question clearly does not rest alone on the question of aggravating the injury of White. The majority seems to believe it does. It rests upon showing the attitude of Craig toward others at the time. Certainly, if he refused immediately after striking White to take his victim, who was so injured that he could not stand, to a hospital, his mental state was exactly that of a man who would drive a car in wanton disregard of the safety of others.

In my opinion, it is clear that the majority has confused the matter of the aggravating of White's injury with the question of showing Craig's attitude, or mental state, at the time. True, he was accused of an unintentional killing. His frame of mind, mood or mental state—call it what you will—clearly has a vital bearing on whether he was then acting in disregard of the safety of others. Certainly, the State would have been permitted to show that he was driving while drunk, had that been a fact. The Supreme Court of Appeals of Virginia has perfunctorily held that proof of drunken driving is proper in the trial of manslaughter. *Massie* v. *Commonwealth,* 177 Va. 883, 15 S. E. 2d 30.

Cases holding proof of mental attitude of the accused by showing his conduct immediately preceding or following the commission of an offense to be proper, are so numerous that it is not necessary to discuss them in detail, and general citations suffice. As to flight before arrest, see annotation in 25 A. L. R. 887; as to flight in an automobile immediately following an injury resulting in death, see *People* v. *Herkless,* 361 Ill. 32, 196 N. E. 829, and *Peo-*

*ple* v. *Schwartz*, 298 Ill. 218, 131 N. E. 806. See also *State* v. *Busby*, 102 Utah 416, 131 P. 2d 510; *State* v. *Wright*, 130 W. Va. 336, 43 S. E. 2d 295, decided June 24, 1947. On consciousness of guilt and conduct tending to show it, see the discussion in Underhill's Criminal Evidence, 4th ed. 465.

The statement in the majority opinion that admitting the testimony that Craig refused to help White violated Section 14 of Article III of our Constitution is so plainly a *non sequitur* that I shall not attempt its answer. Craig was being tried for manslaughter: not a violation of Code, 17-8-23. He was entitled to be "informed of the character and cause of the accusation": not of an offense for which he was not being prosecuted. The books are full of cases involving murder with a deadly weapon where the accused was not charged with carrying a revolver.